OPINION OF THE COURT
Lyman H. Smijth, J.
Plaintiffs’ underlying action attacks the time-honored methodology employed by banks to recover attorneys’ fees upon default judgments calculated as a percentage of the loan balances due from defaulting borrowers. Plaintiffs claim that the familiar provisions found in promissory notes and other instruments evidencing individual loans, which provide for percentage attorneys’ fees in the event of collection litigation, are illegal and unenforceable. Specifically, plaintiffs complain that the practice of defendant banks and their retained attorneys in seeking such percentage attorneys’ fees violates the Banking Law (§ 108, subd 4, par [c], cl [iii]; § 108, subd 5, par [e], cl [iii]) and the General Business Law (§ 601, subd 2).
The defendant banks and law firms now move to dismiss the complaint (CPLR 3211) on various grounds, the primary one being that the . pleadings fail to state a cause of action against any of them. If the motions to dismiss are not granted in their entirety, this court must determine whether plaintiffs Wasserbauer may proceed as "poor persons” (CPLR art 11) and whether this action qualifies for "class action” status under the standards set forth in CPLR article 9. (L 1975, ch 207, § 1.)
Ultimate disposition of the instant motions requires a brief reference to the following background:
Plaintiffs Wasserbauer have been previously named as defendants in two separate collection actions commenced in Supreme Court, Monroe County, on September 18, 1975 by the law firm of Harter, Secrest and Emery, Esqs. (Harter), on behalf of Marine Midland Bank (Marine) to recover balances due on two separate accounts allegedly in default: A Master Charge account ($148.01) and a line-of-credit account ($3,133.85). Both the cash advance agreement (Master Charge) and the line-of-credit agreement between the Wasserbauers and Marine included a provision for attorneys’ fees in the amount of 20% of the balance düe, plus "$10.00 attorneys fees for suit”, in the event either account was placed in the hands of Marine’s attorneys for collection. Pursuant to these provisions, Marine now seeks, in addition to the respective loan balances due on the two accounts, attorneys’ fees in the sum *393 of $630.70 on the line-of-credit account and in the sum of $39.60 on the Master Charge account, sums representing 20% of the unpaid balance due on each account. The Wasserbauers have served answers with general denials in both collection suits, both of which are presently pending.
Plaintiff Dailey heretofore had a default judgment entered against him in Supreme Court, Ontario County, on March 21, 1974 for $2,698.78, which amount included $433.66 as attorneys’ fees for the defendant firm of Nixon, Hargrave, Devans and Doyle, Esqs. (Nixon). Nixon had commenced suit on behalf of Lincoln First Bank of Rochester (Lincoln) to collect the unpaid balance due on a promissory note executed by Dailey in 1973. This note also contained a provision permitting Lincoln to seek an additional 20% of the balance due for attorneys’ fees. The default judgment, including the portion thereof representing attorneys’ fees, was entered in accord- . anee with CPLR 3215 (subd [a]), as a "sum certain”. No moneys have been collected from Dailey in satisfaction of the judgment.
Both defendant law offices concede they have arrangements with their respective banks to retain, as fees a percentage of moneys actually collected. Nixon retains 25% of such moneys, while Harter retains 20%. Neither the banks nor the law firms representing them claim that any such fees are paid prior to actual collection.
PRELIMINARY ISSUES
Prior to addressing the question concerning the sufficiency of plaintiffs’ complaint, it is first necessary to dispose of several collateral issues raised by defendants.
 Marine urges that its pending collection actions, naming the Wasserbauers as defendants, provide sufficient and full opportunity to litigate and resolve the issues which the Wasserbauers now bring to bar. This court disagrees. CPLR 3211 (subd [a], par 4) provides courts with discretion to adopt such "order as justice requires”. Because Wasserbauers’ present action now raises serious questions concerning the methodology of establishing legal fees in collection litigation and because our courts have traditional and inherent powers to review and supervise the charging of fees for legal services (Gair v Peck, 6 NY2d 97), Marine’s motion to dismiss under 3211 (subd [a], par 4) is denied.
*394 Defendants Lincoln and Nixon contend, inter alia, that subdivision 6 of section 108 of the Banking Law will apply to limit the relief available to plaintiff Dailey to the penalties prescribed therein. Again, this court disagrees. The provisions of subdivision 6 of section 108 proscribe the imposition or collection of excessive interest rates. This section of the Banking Law (§ 108, subd 6) is constructively too narrow and too confined in its application to be dispositive of the many issues raised by plaintiffs in their present challenge to the methodology of establishing attorneys’ fees in collection litigation. Additionally, the necessarily concomitant reading of subdivisions 4 and 5 of section 108 of the Banking Law forecloses a finding that the terms "interest rate” includes "attorneys’ fees” and, under no circumstance, may such terms be deemed synonymous. (See Heeland v Security Nat. Bank, 73 Misc 2d 1004.)
Further, the contention of defendants Lincoln and Nixon . that plaintiff Dailey be barred from commencing this action by virtue of the one-year Statute of Limitations (applicable to the overcharging of interest) as provided in CPLR 215 (subd 6), is likewise rejected. Again, the instant action involves matters of broader scope than that contemplated by CPLR 215 (subd 6).
The defendant banks and attorneys also vigorously contend that the failure of the judgment-debtor, Dailey, to answer or move against Lincoln’s original suit and ultimate default judgment must now preclude plaintiff Dailey’s action at bar against such judgment and, indeed, that he should now be limited to a motion to vacate the same (CPLR 5015). It is true that, normally, one attacking a default judgment entered against him is limited to a motion, pursuant to CPLR 5015, to vacate such judgment. However, Dailey argues here that the judgment, including percentage attorneys’ fees, was taken against him as a total "sum certain” (CPLR 3215, subd [a]) and was, therefore, entered without authority of law. He urges that such entry of judgment was thereby rendered null and void ab initio. Suffice it to say, at this point, the possibility that the default judgment may be null and void legitimatizes plaintiff Dailey’s collateral action against the judgment creditor. (Malone v Citarella, 7 AD2d 871.)
Finally, the contention of defendants Lincoln and Nixon that the judgment debtor, Dailey, is precluded on principles of res judicata and collateral estoppel from asserting procedural *395 or statutorial irregularities pertaining to the entry of the default judgment against him must be rejected. Again, the scope of the plaintiffs’ complaint, in its attack upon the methodology of establishing attorneys’ fees in creditor actions against debtors, dictates the need for a full and complete opportunity to comprehensively evaluate and resolve the issues raised therein. In this regard, it may again be noted that our courts not only have inherent power to set aside or vacate judgments in furtherance of the ends of justice (cf. Tomczak v Roetzer, 283 App Div 851), but to resolve in plenary actions, as here, the wrongs complained of, whether the same be intrinsic to the underlying judgment or extrinsic. (See Levine v O’Malley, 33 AD2d 874; Glanzberg v Goldston, 28 Misc 2d 742; Mullins v Bellis, 90 NYS2d 27; Flushing Nat. Bank v Pinetop Bldg. Corp., NYLJ, Jan. 26, 1976, p 10, col 2.)[1]
SUFFICIENCY OF COMPLAINT (CPLR 3211, SUBD [a], PAR 7)
Turning to defendants’ motion to dismiss plaintiffs’ complaint for failure to state any causes of action, it is helpful to treat each of plaintiffs’ causes of action separately and, of course, in a light most favorable to plaintiffs (Cohn v Lionel Corp., 21 NY2d 559; Coutu v Otis Elevator Co., 58 AD2d 131).
Plaintiffs’ first two causes of action, identical, except as they pertain to the two separate banks and their respective law firms, allege that the practice of seeking judgments which include a percentage (and contingent) attorneys’ fee is violative of the Banking Law[2] 3(and, derivatively, the General Business Law, § 601, subd 2)[3] because the attorneys’ fee portion of such judgment exceeds the "actual expenditures” of the banks in obtaining a judgment. Plaintiffs would have this court construe the statutory phrase "actual expenditures” to constitute an indemnification provision whereby no sum of *396 money could be added to the judgment for attorneys’ fees unless the bank had, in fact, paid such a sum, or had become liable to pay such a sum, to its attorneys at the time of obtaining the judgment and, that, regardless of subsequent successful collection.
 This analysis is, at first glance, highly inviting. However, it is unwarranted. "In the construction of statutory provisions, the legislative intent is the great and controlling principle” (Matter of Albano v Kirby, 36 NY2d 526, 529-530). Additionally, "It is a fundamental rule of statutory construction that a statute or legislative Act is to be construed as a whole, and that all parts of an act are to be read and construed together to determine the legislative intent * * * [statutory language, however strong, must yield to what appears to be intention and that is to be found not in the words of a particular section alone but by comparing with other parts or provisions of a general scheme of which it is part” (McKinney’s Cons Laws of NY, Book 1, Statutes, § 97).
Both sections of the Banking Law now under review are preceded by language authorizing a bank to reserve or contract for "actual expenditures”. This is exactly the arrangement both banks have made with their attorneys. There is no authority convincing this court that the agreed upon fee must be paid at the time judgment is entered. Rather, the phrase "actual expenditures” merely limits the amount of attorneys’ fees that may be charged to a defaulting borrower to no more than the sum ultimately to be paid by the bank to its attorneys.
 The usage and custom generated from a statutory scheme are also influential elements in any judicial review of the legislative intent of a particular statutory section (McKinney’s Cons Laws of NY, Book 1, Statutes, § 127). Where, as here, there exists doubt or controversy as to the meaning of statutory language, our courts may look to extrinsic evidence in construing legislative intent (McKinney’s Cons Laws of NY, Book 1, Statutes, § 120).
These portions of section 108 of the Banking Law were adopted by the Legislature in 1937 (L 1937, ch 619) and have remained virtually intact ever since. There has been no significant judicial or legislative concern to interpret the phrase, "actual expenditures”, as plaintiffs now urge. "What long custom and usage has sanctioned, what the weight of judicial authority has approved, that we should be slow to declare
*397 wrongful” (People v Westchester County Nat. Bank of Peekskill, 231 NY 465, 471). Plaintiffs’ first two causes of action are, accordingly, dismissed.
Plaintiffs’ fifth and sixth causes of action must fail for reasons similar to those hereinabove discussed.
The allegations of plaintiffs’ fifth and sixth causes of action, again identical except as they apply to two separate banks and their respective law firms, focus on the phrase "necessary court process” found in section 108 (subd 4, par [c], cl [iii]) and section 108 (subd 5, par [e], cl [iii]) of the Banking Law. Plaintiffs urge that the phrase "necessary court process” pertains only to those procedural steps necessary to obtain a judgment, and is not applicable to the subsequent procedures necessary to effect collection. In the light of usage and custom for upwards of half a century, plaintiffs’ interpretation is too narrow, too confined and, in a word, unworkable. To hold that the statutorial scheme authorizing agreed-upon attorneys’ fees must now be restricted to securing judgments, only, would ignore the oft-required full panoply of legal procedures necessary to successful collection litigation and would, at the same time, ignore practices and procedures that, in fact, antedate the existence of the Banking Law.
Plaintiffs’ third and fourth causes of action, also identical, except as applicable to the two separate banks and their retained attorneys, have merit and shall survive defendants’ motions.
The notion that attorneys’ fees, fixed at the time of agreement solely by arbitrary percentages of then unknown monetary balances, may be deemed to be automatically "reasonable” in every situation, regardless of the procedures, time, effort and skill necessarily demanded of counsel, is archaic. There is an undérstandable nostalgia for an earlier day of almost ruthless freedoms in the area of debtor-creditor law. The doctrine of caveat emptor bred not-so-subtle advantages for lenders permissibly exacting from borrowers a fixed formula for attorneys’ fees in the event of nonpayment of loans. Supposedly, such agreements were made at arm’s length. The borrower gambled that he would not suffer the harsh penalties of arbitrary attorneys’ fees on top of the cost of collection in the event of nonpayment of his loan. The lender gambled that he could, through the efforts of his attorney, collect upon the borrower’s default.
In such a day, the principals in this arrangement enjoyed *398 some measure of parity. But today, the advantages have become noticeably weighted in favor of the banking house and the term "reasonable”, as it pertains to this area, must be returned to its historical definition. The time has come when accountability in all lending must take precedence over contractual freedom.
The Banking Law permits the lender to sue for any unpaid balance and the costs incurred in collecting the same, "including reasonable attorneys’ fees”. For upwards of half a century this legislative mandate has been interpreted by the legal profession to permit the imposition of a fixed percentage of unpaid balances of loans due as "a reasonable attorneys’ fee”, which sum is then automatically incorporated into the judgment obtained against the delinquent borrower, whether by verdict or default, and, that, prior to commencement of any legal procedures or efforts to collect the unsatisfied judgment. It is common knowledge that processes of obtaining and collecting such judgments are, in most instances, routine and perfunctory. The prefixed percentage attorneys’ fee will rarely reflect or accurately equate with the time and skills required to collect such a judgment.
Too often there appears to be an unwritten agreement between the lender and his attorney, to which the borrower is never privy, that the attorney will make up on the collectible judgments for any efforts he may expend on the uncollectible ones. Thus, the judgment debtor with reachable assets or wages will surely pay the uncollectible fee of the judgment-proof debtor,.
In an era when the accountability of the legal profession has experienced increasing public scrutiny, an archaic reliance upon fixed, unsupported and perhaps unfair formulas no longer satisfies acceptable standards of reasonableness. As the bricklayer and mason must account for time and effort, so, too, must the attorney. His remuneration must be measured by his efforts. The statute is clear: the standard is reasonableness. That standard may not be avoided. It must not be hidden from public view. It must not be obliterated or compromised in the murky rights of unilateral arrangements or purported arm’s length negotiations. Rather, a standard of reasonableness must at all times reflect fair dealing and strict accountability.
However, to hold invalid contractual provisions allowing attorneys’ fees based on percentages of moneys due and
*399 owing, per se, is unjustified. Such arrangements have been legislatively sanctioned (Banking Law, § 569, subd 2; Personal Property Law, § 302, subd 7; § 413, subd 5) and judicially examined and approved, subject only to the standard of reasonableness. Indeed, with reference to subdivision 7 of section 302 of the Personal Property Law, the Court of Appeals has of recent date confirmed the validity of percentage fees when there is "an appropriate demonstration that the quantity and quality of legal services actually rendered are such as to warrant, on a quantum meruit basis, that full percentage.” (Matter of First Nat. Bank of East Islip v Brower, 42 NY2d 471, 474.) The court expressed its preference for the standard of reasonableness in these words: "It is evident that the reasonable value of legal services rendered incident to a recovery of a default judgment will not automatically and always be equal to 15%, or indeed to any other percent, of the amount of the indebtedness being collected.” (Matter of First Nat. Bank of East Islip v Brower, supra, p 474.) Accordingly, plaintiffs’ third and fourth causes of action are sufficient and defendants’ motions directed to their dismissal are denied.
 Plaintiffs’ eighth and ninth causes of action, charging defendant banks and law firms with conspiring to violate the Banking Law and General Business Law, are dismissed. While the question of the reasonableness of the attorneys’ fees sought by defendants is to be determined by the proof in this matter, the methodology employed by defendants in seeking such fees does not constitute sufficient grounds upon which to find that defendants conspired to participate in unlawful activities or use unlawful methods in their business practices. (See Health Delivery Systems v Scheinman, 42 AD2d 566; Egan Real Estate v McGraw, 40 AD2d 299.) Public policy demands that all persons should feel free to resort to the courts to assert their rights and seek redress of their wrongs (Burt v Smith, 181 NY 1).
Plaintiffs’ allegation that defendants have violated General Business Law (§ 601, subd 2) is dismissed. With violations of this section constituting a misdemeanor (§ 602, subd 1), it is clear that this statute is penal in nature and, accordingly, must be construed narrowly against those seeking to enforce it (McKinney’s Cons Laws of NY, Book 1, Statutes, § 271). Again, while defendants will ultimately bear the burden of justifying the reasonableness of the attorneys’ fees now sought from plaintiffs, their failure to do so would not result *400 in a findng that attorneys’ fees in a reasonable amount, against plaintiffs, were not justly due and legally chargeable. Additionally, plaintiffs have failed to set forth facts sufficient to make a finding that the accounts involved herein fit within the definition of "consumer claim” as defined in the statute (§ 600).
Plaintiffs’ seventh cause of action claims that the loan instruments involved herein are invalid and unenforceable for four distinct reasons: (1) they constitute contracts of adhesion; (2) they are unconscionable; (3) they provide for the payment of penalties, upon default; and (4) they are against public policy. These charges will be considered separately.
Plaintiffs’ allegations concerning the size of print, placement of the warning concerning attorneys’ fees on the instrument and lack of parity in negotiation concerning the instruments of agreement with defendant banks are insufficient to state a cause of action for contracts of adhesion. "If the signer could read the instrument, not to have read it was gross negligence; if he could not read it, not to procure it to be read was equally negligent; in either case the writing binds him.” (Pimpinello v Swift & Co., 253 NY 159, 162-163.)
 Statutory standards to avoid unconscionability in the law of contracts is set forth in article 2 of the Uniform Commercial Code and is restricted to sales contracts, not herein present (Bankers Trust Co. of Rochester v Walker, 49 AD2d 670). Under common-law principles, an unconscionable agreement must be one "' "such as no man in his senses and not under a delusion would make on the one hand, and as no honest or fair man would accept, on the other”.’ ” (Mandel v Liebman, 303 NY 88, 94.) Plaintiffs’ complaint fails to state a cause of action for either contract of adhesion or unconscionability.
The Court of Appeals has recently reaffirmed its concern over contracts that impose penalties by allowing for unreasonable attorneys’ fees (Matter of First Nat. Bank of East Islip v Brower, supra, p 474; see Equitable Lbr. Corp. v I. P. A. Land Dev. Corp., 38 NY2d 516). The question of whether or not the instant instruments allow for penalties in the way of unreasonable attorneys’ fees is, again, a matter to be proven and, at this stage, should not be dismissed.
While contracts permitting penalties in the form of unreasonable attorneys’ fees are against the public policy of our State, the instant instruments under review are not, per *401 se, violative of public policy and, accordingly, plaintiffs’ cause of action for violations of public policy is dismissed.
Plaintiffs Wasserbauers’ application to be granted "poor person” status (CPLR art 11) for purposes of permitting them to take the oral depositions of certain of defendant banks’ officers, partners and agents at the expense of the County of Monroe is denied (Lester v Lester, 69 Misc 2d 528) with leave, however, to a renewal of such application at a later stage of these proceedings for the relief available under CPLR 1102.
Finally, plaintiffs’ request that this action be maintained as a "class action” is denied. Whether attorneys’ fees collected are reasonable and necessary depends on the facts of a particular case (Franklin Nat. Bank v Wall St. Commercial Corp., 40 Misc 2d 1003, affd 21 AD2d 878) and the common questions necessary under CPLR 901 are, accordingly, not present.

. Defendants’ motion to dismiss pursuant to CPLR 3211 (subd [a], par 1), i.e., "defense founded upon documentary evidence” (judgment against Dailey) must also fail for the reasons expressed herein.

. Section 108 (subd 4, par [c], cl [iii]) of the Banking Law, dealing with personal loans, and section 108 (subd 5, par [e], cl [iii]), dealing with lines of credit, contain virtually identical pertinent language, to wit: "No fee, commission, expense or other charge whatsoever in addition thereto [maximum rate of interest] shall be taken, received, reserved, or contracted for, except * * * (iii) the actual expenditures, including reasonable attorneys fees for necessary court process". (Emphasis supplied.)

. "No principal creditor * * * or his agent shall: "2. Knowingly collect, attempt to collect, or assert a right to any collection fee, attorney’s fee, court cost or expense unless such charges are justly due and legally chargeable against the debtor”.