**In re HYUN–BOK CHUNG and Sin-Suk Chung, Debtors.**

**Bankruptcy No. 82–00187.**

United States Bankruptcy Court, D. Hawaii.

Oct. 15, 1984.

Randolph R. Slaton, Honolulu, Hawaii, for Miramar Hotel.

Howard Tanaka, Honolulu, Hawaii, for debtors.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JON J. CHINEN, Bankruptcy Judge.

On October 14, 1982, Miramar Hotel (Hawaii), Inc., hereafter "Applicant", filed an Application for Disbursal of Proceeds seeking payment of all proceeds received from the auction sale of all the equipment, furniture and inventory which had been in possession of Hyun-Bok Chung and Sin-Suk Chung, hereafter "Debtors", who operated the Miramar Boutique (hereafter "boutique"), under a lease of Space No. 9 at the Miramar Hotel, 2345 Kuhio Avenue, Honolulu, Hawaii. Debtors contend that Applicant has no security interest in the inventory and thus the proceeds from the sale of the inventory should not be paid over to Applicant.

Hearings were held on April 9 and April 22, 1983, at which time the Court requested additional memoranda from counsel and took the matter under advisement.

All memoranda having been filed, and based on the evidence adduced at the hearing, arguments of counsel and the records in the file, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

It is undisputed that Debtors executed a Security Agreement dated March 21, 1981 which covered the equipment, furniture and inventory in Debtor's store. However, Debtors contend that they did not understand the terms of the "Security Agreement."

Prior to the execution of the Security Agreement, because debtors were delinquent in rent payments, Mr. Ronald Lee, controller for Applicant, discussed the matter of payment with Mr. Hyun-Bok Chung and his daughter, Sing Kyung Chung. During the discussion, Mr. Lee asked for a security interest in the equipment, furniture and inventory. Mr. Chung testified that he informed Mr. Lee that he was not able to give a security interest in the inventory because it was on consignment, but that he was willing to grant a security interest in the equipment and furniture.

Nevertheless, the Security Agreement, as prepared by Applicant's counsel, clearly stated that a security interest was granted in "equipment, furniture and inventory". Debtors' daughter picked up the Security Agreement in Mr. Lee's office and took it to Debtors' boutique to have Debtors execute the agreement, later returning the executed agreement to Mr. Lee's office.

Debtors, according to Mr. Chung's testimony, do not understand English and did not read the Security Agreement. Debtors' daughter, however, is a graduate of Kalani High School and Kapiolani Community College; she speaks, reads and understands English and had ample opportunity to review the instrument before execution. Mr. Chung acknowledged that his daughter was present when Debtors executed the Security Agreement, but that he did not ask her to read or explain the document.

Mr. Chung is a businessman, having operated the boutique for several years.

There was nothing to prevent Debtors from having their daughter read and explain the Security Agreement. Debtors were not coerced into signing the Agreement but rather signed the Agreement in their own boutique with their daughter present.

## CONCLUSIONS OF LAW

As a general principle, in the absence of fraud, misrepresentation, or other wrongful act by another contracting party, the ignorance of the contents of a contract expressed in a written document does not affect the liability of the person executing the document. *Upton v. Tribilcock,* 91 U.S. 45, 23 L.Ed. 203 (1875); *Garff Realty Co. v. Better Buildings, Inc.,* 120 Utah 344, 234 P.2d 842 (1951).

A person who signs a contract is presumed to know its contents. *Wallace v. Chafee,* 451 F.2d 1374 (9th Cir.1971).

As the Court said in *Wasserbauer v. Marine Midland Bank,* (1977), 92 Misc.2d 388, 400 N.Y.S.2d 979, 987 (N.Y.Sup.Ct., Monroe 1977),

If the signer could read the instrument, not to have read it was gross negligence; if he could not read it, nor to procure it to be read to him was equally negligent; in either case the writing binds him.

If a person cannot read the instrument, it is his duty to have a reliable person to read and explain it to him, before he signs. *United States v. Fletcher* (DC), 279 F. 160 (W.D.Texas 1922).

In the instant case, the Court finds that Debtors had ample time and opportunity to have the Security Agreement read and explained by their daughter who was fluent in English. Failure to do so was gross negligence on their part and their defense of not understanding the instrument is without merit.

The Court finds that Applicant had a valid security interest over the inventory and thus is entitled to the proceeds from the sale of such inventory.

Judgment will be signed on presentment.