IZARD *v*. JACKSON PRODUCTION CREDIT CORPORATION.

(Division B. April 15, 1940.)

[195 So. 331. No. 34094.]

M. S. McNeil, of Hazlehurst, for appellant.

Henley, Jones & Woodliff, of Hazelhurst, for appellee.

McGowen, J., delivered the opinion of the court.

Appellee, Jackson Production Credit Corporation, sued appellant, Izard, for a balance due on two notes, one dated November 9, 1937, for $600, the other dated March 22, 1938, for $45, both bearing five per cent interest per annum, and both providing that the maker would pay a reasonable attorney's fee if suit were brought on the notes or a portion thereof. Attached to the declaration

is an itemized statement showing the amount of the principal of the notes and the payments made thereon by Izard. This itemized statement shows payments at various times amounting to about $204.37. There was also a credit made on December 8, 1938, on account of a foreclosure amounting to $141. Interest was calculated and the expense of the foreclosure sale was added to the balance of the debt.

Appellant Izard filed a plea of the general issue and the following notice thereunder, to-wit:

"The plaintiff will take notice that upon the trial of this case the defendant will offer evidence to prove and will prove that the agents of the plaintiff came to his field in the month of June, 1938, and agreed with the defendant that if he would turn over to him his cotton check for the year 1938 that they would finance him for the year of 1939; that after said cotton check was turned over to the plaintiff, to-wit, on the ——— day of ————, 1938, the defendant applied to the plaintiff for a loan, whereby he, the defendant, would be financed for the year of 1939; that said loan was immediately turned down and the plaintiff wholly failed and refused to finance the defendant, as they agreed to do.

"Whereby, as a result of the breach of the contract which was made and entered into by and between the plaintiff and the defendant the defendant has been damage in the sum of $401.70, which the defendant pleads by way of recoupment against the claim of the plaintiff, and asks that said amount be set off against the claim of the plaintiff."

Appellee replied to this notice and denied that any contract to finance the appellant had been entered into by it.

On a hearing of the case, the appellee established the balance due as being $351.55, for which amount the court gave a peremptory instruction to the jury in favor of the appellee; and further instructed them to find for the appellee such additional amount as reasonable attorney's

fee as the evidence warranted. The jury rendered a verdict in favor of the appellee for $386.55, which included, as a reasonable attorney's fee, the sum of $35.

The court below excluded all of the evidence offered by the appellant on his plea of recoupment, so the only issue submitted to the jury was the amount of a reasonable attorney's fee.

The only error assigned here is the action of the court in excluding the appellant's evidence on his plea of recoupment.

It was shown by the cross-examination of Hamilton, the general agent and manager of the appellee, that he, in company with Ashley, field representative of the county, went to the field of Izard for the purpose of procuring an extension agreement of his indebtedness, which was then past due; that he procured this agreement, signed by Izard, which extended the debt from June 15, 1938, to September 15, 1938; and, that Izard delivered to him an assignment or order for a Government check due sometime in 1938, which was to be credited on the indebtedness. The aforesaid Government check was due on the cotton crop of that year.

The notes were executed by Izard for advances made by the appellee for the production of a vegetable crop for the year 1938. He also executed as security for the notes a chattel mortgage on certain livestock and personal property. In December, 1938, the appellee foreclosed this chattel deed of trust and credited the notes with the amount collected from the sale of the personal property. The evidence offered by the appellant was to the effect that the value of the livestock, wagon and plow tools was $401.70, and that by the forced sale thereof, in the foreclosure proceeding, he was damaged to that amount.

Hamilton denied that he made any agreement to finance Izard for the year 1939, and that such subject was mentioned. Izard testified as to the contract which is alleged to have been breached by the sale of the personal

property under foreclosure proceedings, as follows: "I was in the tomato patch when they (Hamilton and Ashley) drove over in the field. They never did get out of the car. I saw the car up near the negro house and I walked out there and I knew Mr. Ashley and he introduced Mr. Hamilton to me. Mr. Hamilton joked me about paying the preacher and I told him I could not pay the preacher anything, because I was paying him everything I had. He said then, 'You will get a cotton check?' and I said 'Yes.' He said 'If you will give me security on this cotton check, not the one you get this fall, but the one you get next spring on the '39 crop.' I was getting a check a few days later on. I don't remember just when, but it was before Christmas. He says 'We don't want that one, we want the one that is on the '38 crop, you will get it in the spring of '39,' and he said 'We will finance you if—'" Here objection was interposed by the appellee, which was sustained by the court. The jury retired, and the appellant was allowed to continue, as follows: "Q. Go ahead where you left off, Mr. Izard. A. I don't remember just where I left off. He said I would not need the check that was coming then for he would finance me, but I would need the one coming last fall. The one I am due in a short time, he asked for security, and he said 'I will be glad to finance you and you won't need it and I will put that on your debt' and I signed the paper. . . . I didn't read it. I didn't have my glasses and couldn't read it." (The paper referred to was the extension of the notes.)

"Q. Did you think, Mr. Izard, you were arranging to have yourself financed on that same loan for the year 1939? A. Why sure, I thought they was going to carry me over with a balance and finance me to make another crop.

"Q. By giving you credit on this same indebtedness for whatever you were getting out of your cotton check? A. Yes, sir.

"Q. And then carry it over for another year and finance you for another year? A. Yes, sir, that is what I thought."

He then testified that he would not have signed the extension agreement if it had not been for this representation. He was then asked: "Q. Was that the sole and only representation they made you out there with reference to this cotton check? A. Yes, sir, they said they would finance me another year if I would give them security on this '38 check."

To sustain the peremptory instruction granted it by the court below, the appellee insists (1), that the alleged agreement to finance for another year was too vague, indefinite and uncertain to constitute a valid and enforcible contract; (2) no damages have been proven which are recoverable for alleged breach of contract to make a loan; and (3) the alleged parol contract to finance the appellant was merged into the written contract for extension to September 1938.

We think the case is easily solvable upon the first proposition. That is, taking the alleged parol contract entered into between Hamilton and Izard in the most favorable light possible, it was too vague and uncertain to constitute an enforcible contract, for the breach of which damages would be enforcible.

The contract in Izard's own language was: If you will give me your 1938 cotton check to apply on your indebtedness, I will finance you for the year 1939. We call attention to the fact, according to the appellant's version of his understanding of the meaning of the contract, very little weight can be attached to it, for the reason that immediately after this parol contract was entered into, he signed an extension agreement to September 15, 1938, which was an immediate departure from his understanding that the indebtedness would be carried over and that there would be no foreclosure in enforcement of the debt until 1939. The contract then, upon which Izard must rely, is the bare statement—if

you will apply your cotton check due you for the 1938 cotton crop, I will finance you for another year. This constituted no contract whatever to lend money to the appellant on the part of the appellee. There was no agreement as to when, in the year 1939, he would be furnished money with which to make another crop; the amount to be furnished; the rate of interest; or as to security for the advancement.

As to the enforcibility of this contract, we say that it was too vague, indefinite and uncertain to constitute a valid contract and therefore cannot be enforced. In A. L. I., 1 Restatement, Contracts, section 32, the following is stated: "An offer must be so definite in its terms, or require such definite terms in the acceptance, that the promises and performances to be rendered by each party are reasonably certain." The evidence shows that Izard understood that a definite contract would be necessary, for, in December 1938, he applied to the appellee for a loan, which was refused.

Sustaining this view, with reference to contracts to lend money in the future, we cite the cases of Erwin & Williams v. Erwin, 25 Ala. 236; Gafford v. Proskauer & Co., 59 Ala. 264; and, the very interesting case of Garcin v. Granville Iron Corp., 137 Misc. 648, 244 N. Y. S. 145. There was no enforcible contract in this case upon which damages for the breach thereof could be calculated for the reason that the contract is too indefinite to be enforced.

We deem it unnecessary to examine any other questions in this case in view of this conclusion.

Affirmed.