369 So.2d 746 (1979)
FIRST MONEY, INC., formerly Money, Inc., d/b/a E-Z Finance Plan and Gerald Schaar
v.
Clifford C. FRISBY.
No. 50969.
Supreme Court of Mississippi.
April 4, 1979.
Rehearing Denied May 2, 1979.
*747 Eaton, Cottrell, Galloway & Lang, James B. Galloway, Gulfport, for appellant.
Denton & Persons, William L. Denton, Biloxi, Ray Mitchell, Ocean Springs, for appellee.
Before PATTERSON, C.J., and BROOM and BOWLING, JJ.
PATTERSON, Chief Justice, for the Court:
This is an appeal from a judgment of the Circuit Court of Harrison County, Second Judicial District, where a verdict of $35,000 was awarded Clifford Frisby for damages arising out of a controversy concerning a real estate financing scheme.
The amended declaration of Frisby, appellee, consisted of four counts, the first for breach of loan commitment, the second for negligent misstatements, the third for breach of fiduciary duties and the fourth for fraud. A demurrer was sustained to Count IV and Count III was dismissed upon the defendants' motion for a directed verdict. The theories expressed in Counts I and II of the declaration and the testimony related thereto were submitted to the jury for its resolution and when the verdict was returned for the plaintiff, the defendants moved for a judgment notwithstanding the verdict and for a new trial or a remittitur, all of which were overruled.
The amended declaration, after identifying the parties and alleging the jurisdictional necessities, alleges in Counts I and II the following:

*748 FIRST CAUSE OF ACTION: BREACH OF LOAN COMMITMENT
I.
That the money which was to be used by the Plaintiff was for the particular purpose of acquiring title to said thirty (30) acre tract and this particular purpose was known at the time by the Defendants who contracted to make said loans.
II.
That as a direct and proximate result of the breach of said loan commitments by the Defendants, the Plaintiff suffered an ascertainable amount of loss of profits.
III.
That said thirty (30) acre tract of property lost by the Plaintiff as a result of the breach of contract by the Defendants is that certain parcel of land (description omitted).
IV.
That the Defendants' breach of contract was willful, malicious and intentional and constitutes fraudulent, oppressive, and outrageous conduct on the part of the Defendants toward the Plaintiff entitling Plaintiff to recover from the Defendants punitive damages in addition to actual damages.
WHEREFORE, Plaintiff, CLIFFORD FRISBY, demands damages as follows:
1. Compensatory damages in the sum of Five Hundred Thousand Dollars ($500,000.00).
2. Punitive damages in the sum of Five Hundred Thousand Dollars.
COUNT II: NEGLIGENT MISSTATEMENT
I.
That the Defendant, by and through its agent, acting within the scope of his authority, supplied to the Plaintiff, CLIFFORD FRISBY, false information for guidance of his business transactions, and that Plaintiff, CLIFFORD FRISBY, justifiably relied upon said information to his pecuniary loss, damages for which he is entitled to sue and recover.
II.
That the Defendant knew or in the exercise of ordinary care should have known that it was supplying false information to CLIFFORD FRISBY.
III.
As a direct and proximate result of said acts of the Defendant as aforesaid, Plaintiff suffered pecuniary loss.
WHEREFORE, Plaintiff, CLIFFORD FRISBY demands damages as follows:
1. Compensatory damages in the amount of Five Hundred Thousand Dollars ($500,000.00).
2. Punitive damages in the amount of Five Hundred Thousand Dollars ($500,000.00).
In compliance with a motion for a bill of particulars to Count II for negligent misstatement, the plaintiff responded with the following:
2. Response to Number 2(a): The nature of the false information given for guidance of Plaintiff's business transactions was the general plan and scheme set forth by agents of the Defendant for the acquisition of the thirty acre tract in issue. The information was false in that Defendant had no intention of following through on behalf of the Plaintiff.
Response to Number 2(b): The exact information for guidance of the Plaintiff's business transactions which is alleged to be false is contained in Plaintiff's deposition and answers to interrogatories. Specifically, the Defendant promoted and encouraged the purchase of the thirty acre tract in question through the Plaintiff, assuring him that loan monies would be available until the entire tract was purchased, when in fact, the Defendant had no intention of allowing Plaintiff to proceed to the completion of the project.

*749 Response to Number 2(c): Approximately $500,000.
Response to Number 2(d): The name of the person who specifically supplied the false information is Gerald Schaar. The false information was supplied throughout the period of time Plaintiff was dealing with the Defendants in the effort to purchase the thirty acre tract in question. The place the false information was supplied was the Biloxi address of the Defendants.
The testimony reveals that Frisby first came into contact with Money, Inc., d/b/a E-Z Finance Plan (hereinafter E-Z), on May 2, 1974, through his father who had met Gerald Schaar, E-Z's agent, when he accompanied appellee's sister to E-Z's office to obtain a loan. The conversation, aside from their business, moved to the growth of North Biloxi and the increasing values of property. Plaintiff's father informed Schaar that his son owned property in the area. At the time Schaar suggested the possible acquisition of the properties adjoining that of the appellee and during the afternoon drove to the place of business of Frisby for a discussion with him. A plan emerged whereby Frisby was to attempt the purchase of the lots adjoining his in furtherance of their mutual thought that a consolidated tract would have a greater value for development than would a fragmented tract.
According to Frisby, Schaar represented "... that they had financing available, that if I could get something going as far as purchasing the additional pieces of property that I could get the financing on it," and further, that E-Z would obtain a buyer for the entire tract within a year at a profit to Frisby. Acting on these representations, Frisby testified that he purchased several lots for $89,901.70 which were financed by E-Z. Moreover, although the loan instruments specified monthly payments, that as a part of his agreement with Schaar he was not required to make either installment or interest payments.
Difficulties arose after Frisby obtained a written commitment for the purchase of the Joe Juen property and an oral commitment for the purchase of Mrs. Joe Wood's property, the remaining two parcels in the tract. A meeting was held with the attorney of Joe Juen to close the loan which would have secured that property, but the funds, $60,000, necessary to close the commitment were not provided by E-Z, instead E-Z deferred on the premise that another day was needed to research the title. In the weeks following Schaar continued to give assurances that the money was available. However, none was ever forthcoming.
In early September 1974 Schaar attempted to obtain an interest in the tract of property through a real estate investment group plan proposed by Schaar whereby he and his associates would receive 40% participation in the investment. Frisby declined the proposal because he did not desire to share the fruits of his efforts with others.
Thereafter Frisby failed in his attempts with other institutions to finance the parcels previously purchased and E-Z foreclosed. Frisby was successful only in maintaining the mortgage payments on the tract that belonged to his sister. This suit, with the result stated, followed.
The appellants first contend that the trial court erred in overruling defendants' motion to strike Count II of the amended declaration, in overruling the defendants' motion for a directed verdict and in refusing defendants' request for a peremptory instruction. We are of the opinion there is some merit to appellants' argument that the demurrer or motion to strike should have been sustained. However, we think the cause should be decided on its merits and that the court erred in not sustaining the motion for a peremptory instruction at the conclusion of all of the evidence.
Although Count II is styled "Negligent Misstatement," the governing allegations are the defendants supplied "false information for guidance of his business transactions, and that plaintiff, ... justifiably relied upon said information to his pecuniary loss," and "the defendant knew or in the exercise of ordinary care should have known that it was supplying false *750 information to Clifford Frisby." However, the response to the bill of particulars, a part of the declaration inasmuch as it particularizes it, states the false information was the general plan set forth by the agents of the defendant and "the information was false in that defendant had no intention of following through on behalf of the plaintiff," and "specifically the defendant promoted and encouraged the purchase of the 30-acre tract in question through the plaintiff, assuring him that loan monies would be available until the entire tract was purchased when in fact, the defendant had no intention of allowing plaintiff to proceed to the completion of the project." (Emphasis added.)
As we comprehend Count II of the declaration as particularized, it alleges at best a cause of action for fraud arising out of the assurances that loan monies would be available to purchase the lots within the tract which were not fulfilled. It does not allege, except in very broad terms, what information, as distinguished from assurances, was negligently given to mislead the plaintiff. The basis for damages resulting from negligent misrepresentation is the lack of care; the basis for damages resulting from fraud is the want of honesty. See Restatement of the Law (Second) sections 549 and 552 (1977). The lack of care in misrepresentation and the want of honesty in fraudulent misrepresentation in business transactions give rise to distinct causes of action, the one in tort, the other in fraud. The present declaration, in our opinion, leaves great doubt as to whether it states a cause of action for negligent misstatement of information since the gravity of the allegations appears to charge fraud in very general terms, insufficient, we think, to withstand a demurrer. However, we forego the technical doubt of sufficiency on demurrer in favor of a conclusion based upon the pleadings as they are, and the evidence presented.
In McMahon v. McMahon, 247 Miss. 822, 157 So.2d 494 (1963), we held: "Before a party can claim the benefit of fraud, the party must clearly allege the facts and circumstances which constitute the fraud... ." (247 Miss. at 836, 157 So.2d at 501). And, in Otts Finance Co. v. Myers, 169 Miss. 407, 152 So. 834 (1934), we held: "... There is no sounder doctrine of law established in our courts than that he who alleges fraud must state the facts upon which the fraud is based... ." (169 Miss. at 413, 152 So. at 835).
Mississippi Power Co. v. Bennett, 173 Miss. 109, 161 So. 301 (1935), presented a situation in which the power company was alleged to have induced Bennett to purchase stock by representing that it would earn 6% interest and that the money invested would be refunded upon request. Bennett charged the representations were not true and that the company had no intention of carrying out the agreement and that in reliance thereon he was damaged. The Court stated:
The appellant contends that the representations relied on reduced themselves to two contractual promises: (1) A promise to pay dividends in the future; and (2) a promise or representation that in future, if and when appellee desired his money back, he could obtain it, the same as he could get it back if it were in a bank... .
* * * * * *
It is settled rule that a contractual promise, made with the undisclosed intention of not performing it, is fraud ... (Citations omitted) (173 Miss. at 128-9, 161 So. at 306)
There is great doubt as to whether the allegations of the declaration are sufficient to state a cause of action in tort or in fraud, but considering it sufficient to state a cause of action in tort, nevertheless, the evidence related to this theory is insufficient, even with all reasonable inferences therefrom, to have been submitted to the jury. On the other hand, if the declaration be considered to have stated a cause of action in fraud, the evidence is also insufficient to establish that the fraudulent intention existed not to provide the monies at the time of the assurances. We therefore think the trial court erred in not sustaining *751 defendants' motion for a peremptory instruction.
It is next contended by the appellants that the court erred in overruling their motion for a directed verdict at the close of plaintiff's testimony and in overruling a motion for a peremptory instruction at the conclusion of all the evidence. The testimony most favorable to Frisby is that Schaar told him that if he, Frisby, could put all of the property together, E-Z would lend the necessary funds for its acquisition and would produce a buyer to acquire the tract from him for a profit. This evidence, considered in the light most favorable to the plaintiff, with all reasonable inferences, in our opinion falls short of the burden assumed by the plaintiff in proving the existence of a contract for the loan, and a breach of such commitment.
In Izard v. Jackson Production Credit Corp., 188 Miss. 447, 195 So. 331 (1940), a case where Izard claimed the existence of a contract to finance his cotton crop for the 1939 season, Izard testified that the agent of the Jackson Production Credit Corporation told him that if he, Izard, gave such agent his cotton check for the 1938 crop, financing would be available for the 1939 crop. We held the proof was insufficient to establish a contract, stating:
... [T]aking the alleged parol contract entered into between Hamilton and Izard in the most favorable light possible, it was too vague and uncertain to constitute an enforceable contract, for the breach of which damages would be enforceable.
... The contract then, upon which Izard must rely, is the bare statement  if you will apply your cotton check due you for the 1938 cotton crop, I will finance you for another year. This constituted no contract whatever to lend money to the appellant on the part of the appellee. There was no agreement as to when, in the year 1939, he would be furnished money with which to make another crop; the amount to be furnished; the rate of interest; or as to security for the advancement.
As to the enforceability of this contract, we say that it was too vague, indefinite and uncertain to constitute a valid contract and therefore cannot be enforced. In A.L.I., 1 Restatement, Contracts, § 32, the following is stated: "An offer must be so definite in its terms, or require such definite terms in the acceptance, that the promises and performances to be rendered by each party are reasonably certain."...
... There was no enforceable contract in this case upon which damages for the breach thereof could be calculated for the reason that the contract is too indefinite to be enforced. (188 Miss. at 453-4, 195 So. at 333)
We are of the opinion the present allegations and proof are lacking in required specificity to define the nature and extent of the parties' obligations and since this is so, there was no contract and hence no breach of it.
REVERSED AND RENDERED.
SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.