IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 98-60491
_____

ACS CONSTRUCTION CO., INC. OF MISSISSIPPI,

Plaintiff-Appellee,

V.

GENERAL POWER CORPORATION, ET AL,

Defendants,

VENGROFF, WILLIAMS AND ASSOCIATES, INC.,

Defendant-Appellant.

_____

Appeal from the United States District Court
Northern District of Mississippi
Civil Action No. 4:96-CV-35-WB-B
_____

**December 30, 1999**

Before DAVIS and JONES, Circuit Judges, and LEMELLE[*], District
Judge.

DAVIS, Circuit Judge:[**]

Appellant Vengroff, Williams and Associates, Inc. ("Vengroff
Williams") appeals the money judgment of the district court entered
on a jury verdict. Appellant contends that the district court
erred in determining it had personal jurisdiction based on the

_____

[*]District Judge of the Eastern District of Louisiana, sitting by
designation.

[**]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this
opinion should not be published and is not precedent except under
the limited circumstances set forth in 5TH CIR. R. 47.5.4.

contract prong of the Mississippi long-arm statute. In particular, Vengroff Williams argues that the district court's determination that it had personal jurisdiction was erroneous because the evidence was insufficient to establish that a contract was perfected in the meeting between Appellee ACS Construction Company, Inc. of Mississippi ("ACS") and Vengroff Williams. Appellant further argues that even if a contract was formed at the Greenwood, Mississippi meeting, none of the contract was performed in Mississippi. We conclude that no enforceable contract was entered into at the Greenwood, Mississippi meeting and that the district court erred in finding that it had personal jurisdiction under the "contract prong" of the Mississippi long-arm statute. We therefore reverse the judgment of the district court.

## I.

This case arises from a government contracting job gone awry. In 1994, ACS sought two government building contracts, one at Fort Bragg in North Carolina and one at Fort Campbell in Kentucky. General Power Corporation ("General Power"), a South Carolina corporation, submitted bids to ACS to perform the electrical work for both projects. General Power was 50 percent owned by Albert B. Cialone. Vengroff Williams--whose principals are Harvey Vengroff and Robert Williams--and Sheldon Electric Co., Inc ("Sheldon Electric")--whose principal is Barry J. Beil-- each owned 25 percent shares in General Power. ACS used General Power's pricing in its bid to the government for both projects.

ACS was awarded both contracts and opened discussions with General Power about awarding General Power the electrical subcontract. When General Power informed ACS that it was unable to provide a performance bond, as it had agreed to do, ACS became concerned with General Power's stability and began to look elsewhere for an electrical subcontractor. In an effort to allay these concerns, General Power invited ACS's principals to a meeting in New York. ACS declined the invitation and instead invited General Power to attend a meeting at ACS's headquarters in Greenwood, Mississippi.

General Power was well represented at the meeting with ACS in Greenwood, Mississippi. The General Power representatives were Al Cialone, Barry Beil, and critically for purposes of this appeal, Harvey Vengroff, representing his company Vengroff Williams. General Power met with ACS for approximately one and a half hours. The main topics discussed were the technical aspects of the electrical work that General Power would perform if it obtained the subcontracts from General Power. The subject turned briefly to General Power's financial ability to perform the subcontracts. Mr. Vengroff assured ACS that his company was an investor in General Power and that it would provide the necessary financial support to assure completion of the subcontract.

No contracts were signed at the Greenwood, Mississippi meeting, but later in North Carolina, ACS and General Power signed electrical subcontract agreements covering the two government construction projects.

3

In the course of completing the electrical work at the construction sites, General Power ran into a series of difficulties. By all accounts, Cialone failed miserably as an administrator, and Vengroff Williams and Sheldon Electric came to his assistance. Despite Vengroff Williams' infusion of approximately $800,000 into General power and Mr. Williams' assumption of management duties at the Fort Bragg project, General Power continued losing money and it eventually filed for bankruptcy. ACS then commenced the present suit, alleging that, by allowing General Power to default on the subcontract, Vengroff Williams failed to perform as it had promised.

ACS initiated this action against General Power, Al Cialone; Vengroff Williams, Harvey Vengroff and Robert Willams; Sheldon Electric and Barry Beil. ACS sued the parties under several theories, including breach of contract against General Power and breach of implied-in-fact contract against Vengroff Williams and Mr. Vengroff and Mr. Williams, individually. ACS also sued Vengroff Williams, Sheldon Electric, and the individual principals of these firms for the torts of trover, conversion, and material misrepresentation and fraud.

Shortly before trial ACS's trover and conversion claims were dismissed pursuant to summary judgment. At this time, Vengroff Williams and other parties to the suit filed motions to dismiss for lack of personal jurisdiction until the close of plaintiff's case. The district court postponed ruling on the motions for lack of personal jurisdiction. At the conclusion of ACS's case-

4

in-chief, the district court (1) dismissed ACS's fraud and misrepresentation claims, and (2) determined that it had personal jurisdiction over Vengroff Williams.

The district court allowed ACS's breach of contract claim against Vengroff Williams to go to the jury, which returned a verdict for $83,000 in favor of ACS and against Vengroff Williams.  This appeal followed.

## II.

In a federal diversity action, personal jurisdiction is determined by a two-step inquiry addressing: (1) the forum state's long-arm statute, and (2) federal due process.  Allred v. Moore & Peterson, 117 F.3d 278, 281 (5th Cir. 1997).  If the state long-arm statute is not first satisfied, the federal due process question is never reached and jurisdiction fails.  Cycles v. Digby, 889 F.2d 612, 616 (5th Cir. 1989).  The Mississippi long-arm statute provides in relevant part:

> Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the Constitution and laws of this state as doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state ... shall by such acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state.

Miss. Code Ann. § 13-3-57 (Supp.1998).  Thus, the existence of an enforceable contract is a prerequisite to a finding of personal jurisdiction under the "contract prong" of the Mississippi long arm

5

statute.

We therefore turn to the principal argument on appeal: whether the evidence is sufficient to support the jury's finding that a contract was perfected. In order to find that a contract exists, a fact finder must determine that both parties agreed to all of the essential terms. See Ham Marine, at 459; Knight v. Sharif, 875 F.2d 516, 525 (5th Cir. 1989). Because the alleged contract arose from the parties' conversations at the Greenwood meeting, Mississippi contract law governs.

The district court held that the contract prong of the long-arm statute was satisfied because ACS produced prima-facie evidence of an oral agreement by Vengroff Williams to provide funding to General Power for the subcontracts. The court further found that administrative functions performed in Mississippi by ACS, pursuant to the written subcontracts with General Power, satisfied the requirement that at least part of the contract be performed in Mississippi.

Vengroff Williams argues that the conversation the trial court relied on is too vague and indefinite to constitute a completed contract.

Several cases decided under Mississippi law refuse to enforce oral contracts where essential terms are too vague and indefinite. Beck v. Goodwin, 456 So.2d 758, 761 (Miss. 1984); First Money, Inc. v. Frisby, 369 So.2d 746, 751 (Miss. 1979); Izard v. Jackson Production Credit Corp., 188 Miss. 447, 195 So. 331, 333 (1940). Beck is particularly analogous to the facts-at-

hand.

In Beck, the owner of a used car business brought an action against a bank for breach of contract and alleged that the bank agreed to finance the used car business but failed to do so. 456 So.2d at 759. The plaintiff asserted that he obtained a Small Business Administration loan through the bank in order to expand his business based on the bank's specific assurances. Id. According to the owner the bank specifically told him that "financing would never be a problem" and that the bank "would never arbitrarily cut off financing to him". Id. About a year after the owner obtained the loan, the financing agreement was terminated by the bank. Id. The Supreme Court of Mississippi, in affirming the trial court's grant of a demurrer in favor of the bank, held that the agreement was too vague and indefinite to be enforced. Id. at 761.

In the case-at-hand the parties agree that Mr. Vengroff never stated how much money he was willing to contribute to General Power and never stated how long he was willing to continue funding General Power. Assuming as we must that Vengroff promised to fund General Power to the extent necessary to assure General Power's performance, such a vague and indefinite promise is insufficient as a matter of law to constitute an enforceable contract. It is undisputed that the parties did not even discuss terms that would be essential to the formation of a contract. As the court observed in Beck: "[a]ppellants did not allege how much money was to be advanced, when it was to be advanced, on

7

what security the advances were to be made, when the advances would be repaid, or what interest would be charged for the advances." 456 So.2d at 761.

Because we conclude that no contract was formed in Mississippi between ACS and Appellants, the district court had no personal jurisdiction over Vengroff Williams.

## III.

For the reasons stated above, we REVERSE the judgment of the district court and REMAND this case so that the district court can dismiss this suit without prejudice.

REVERSED and REMANDED.