WORLD FIRE & MARINE INS. CO. *et al. v.* KING *et al.*

(Division B.   Oct. 30, 1939.   Suggestion of Error Overruled Jan. 8, 1940.)

[191 So. 665.   No. 33850.]

Watkins & Eager, of Jackson, for appellants.

**E. L.** and **W. W. Dent**, of Collins, for appellee, J. J. King.

**Hamilton & Todd,** of Jackson, for appellees, The Hobart Manufacturing Company and McCray Refrigerator Company.

Argued orally by **Elizabeth Hulen** and **W. H. Watkins**, for appellant, and by **E. L. Dent**, for appellee.

**Ethridge, P. J.**, delivered the opinion of the court.

On the 7th day of January, 1938, the Camden Fire Insurance Company of Camden, New Jersey, issued a policy of $1,500 on store furniture and fixtures, including iron safes and cash registers, only while contained in the building which is described in the policy. The policy contained what is known as the "loss payable clause," and in this clause the name of the Smith County Bank of Taylorsville, Mississippi, was inserted, loss payable to be to it as its "interest may appear." The policy also contained this clause: "The entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof; or if the interest of the insured in the property be not truly stated herein; or in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss."

On the same day, the same agent, who wrote the policy of the Camden Company, also executed a policy on behalf of the World Fire & Marine Insurance Company of Hartford, Connecticut, in the sum of $2,000, for a premium of $59.41, in favor of J. J. King, "on his stock of merchandise, consisting chiefly of groceries, packing house prod-

ucts, tobaccos, candy's, and such other merchandise, not more hazardous, usual to his trade, only while contained in the above described building.'' The building was described in the policy, and showed that the insured occupied it as a tenant. This policy contained the three-fourths valuation clause, as did also the Camden Company policy. The policy also contained:

''Warranty to keep books and inventories, and to produce them in case of loss—The following covenant and warranty is hereby made a part of this policy:

''1st. The assured will take a complete itemized inventory of stock on hand at least once in each calendar year, and unless such inventory has been taken within twelve calendar months prior to the date of this policy, one shall be taken in detail within 30 days of issuance of this policy, or this policy shall be null and void from such date, and upon demand of the assured the unearned premium from such date shall be returned.

''2. The assured will keep a set of books, which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and credit, from date of inventory, as provided for in first section of this clause, and during the continuance of this policy.

''3d. The assured will keep such books and inventory, and also the last preceding inventory, if such has been taken, securely locked in a fire-proof safe at night, and at all times when the building mentioned in this policy is not actually open for business; or, failing in this, the assured will keep such books and inventories in some place not exposed to a fire which would destroy the aforesaid building.

''In the event of failure to produce such set of books and inventories for the inspection of this company, this policy shall become null and void, and such failure shall constitute a perpetual bar to any recovery thereon.''

The insurance companies filed a bill in the Chancery Court of Covington County for the cancellation of the

policies involved, setting up a breach of the conditions set forth in the said policies quoted above; the Camden Company's policy having the same provision as to keeping books, inventories, etc., as the World Fire & Marine Insurance Company's policy. In the Camden policy, the bill set forth that the contract provided that "This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void if . . . the subject of insurance be personal property and be or become encumbered by chattel mortgage . . ." It was then alleged: "that the subject of said insurance contract was personal property, and that the same was or became encumbered by a chattel mortgage, in that the said J. J. King executed a chattel mortgage to J. E. Campbell on July 23, 1936, the same being recorded in the office of the Chancery Clerk of Covington County, Mississippi, in Book 110 at Page 61 thereof, and a certified copy of the same being attached hereto marked Exhibit 'B,' and asked to be made a part hereof and considered herewith as though set out herein in full in words and figures. That at the time of the destruction of said property by fire said complainant owed to J. E. Campbell under the terms of said chattel mortgage approximately $550.00." They alleged, also, in addition thereto, that J. J. King executed to the Hobart Manufacturing Company a chattel mortgage or retention of title contract on one meat slicer, one meat chopper, and one pair of scales; said chattel mortgage being recorded in the Chancery Clerk's Office of Covington County in Book 110, Page 89, a certified copy of that instrument being attached to the bill. It is alleged, in addition thereto, that the said King executed to the McCray Refrigerator Sales Corporation a chattel mortgage on certain of the property in the building covered by the insurance policy; and it was further alleged that J. J. King permitted a judgment to be entered in the Justice of the Peace Court on December 24, 1937, in the sum of $86.25 and costs, and that a writ of garnishment emanated from the said court at the suggestion of

the McGowan Coffee Company, and was then served on the complainant, and the complainant answered, denying any indebtedness, and the McGowan Coffee Company contested the said answer and the bills and prayed that the respective parties be made defendants to the suit.

The Court, on final hearing of the cause, entered a decree, finding and adjudging in favor of J. J. King and adjusting the rights of King's creditors between them and King.

The appellant World Fire & Marine Insurance Company also filed a bill against J. J. King, McGowan Coffee Company, and the Smith County Bank, setting up that on the 7th day of January, 1938, it issued a policy of insurance at the instance and request of the said King against damage by fire or tornado to a certain stock of merchandise consisting chiefly of groceries, packing house products, tobaccos and candies, to the extent of $2,000, while located in the two-story brick building (described in the policies) occupied by the said J. J. King and other tenants, giving the location of the building in Mount Olive, Mississippi. A copy of the policy was attached to the bill, with endorsements thereon. It was then alleged that the original of the said policies was in the possession of King or the Smith County Bank, and it was asked that the policy be exhibited by either one or the other in answer to the bill. It was then alleged that said policy contract provided, among other things, the following, to-wit: "Warranty to keep books and inventories, and to produce them in case of loss—The following covenant and warranty is hereby made a part of this policy: Etc." (The provision hereinabove set out in the policy of the World Fire & Marine Insurance Company policy.)

It was then alleged that the defendant J. J. King had made an inventory on said stock of goods on or about the 2d of January, 1938, and that said inventory was made in his place of business at the time that said policy of insurance was entered into; but that in violation of

its terms and the provisions of the said policy contract, the said defendant J. J. King failed to keep a set of books, which clearly and plainly presented a complete record of business transactions, including all purchases, sales and shipments, both for cash and credit, from the date of the said inventory, as provided for in said policy, and that said defendant J. J. King failed to keep such books and inventories as he had securely locked in a fire-proof safe at night, and at all times when the building the was not actually open for business; and that having failed in this, the said defendant did not keep them in some place not exposed to fire which would destroy the building aforesaid.

On or about the 24th of January, 1938, in the night-time, when said store building was not open for business, the building (said store) was completely destroyed by fire, and the inventory and all books and records kept by the said defendant J. J. King were in said building at the time of the fire and were destroyed. None of the said inventory, books, records, etc., were kept in a fire-proof safe by the defendant, but were exposed to the fire which destroyed said building, and were burned therein; and as a result said defendant J. J. King failed to produce such books and inventories for the inspection of the complainant after the fire; and that in consequence thereof, the policy was null and void, and defendant J. J. King is perpetually barred from recovery thereon; but, nevertheless, said defendant has asserted and is now asserting a claim against complainant for the full face amount of the said policy.

It was then alleged that the Smith County Bank had no mortgage or lien of any kind against the property covered by the said insurance contract, but that all indebtedness owing to it by the defendant King was evidenced by an unsecured note, and that therefore the Smith County Bank had no right, title, interest or lien in or to the said insurance contract. It was then set up that the McGowan Coffee Company had secured judgment against

J. J. King in the Justice of the Peace Court of F. O. Smith, Covington County, Mississippi, on December 24, 1937, in the sum of $86.25, and that a writ of garnishment had emanated from the said court at the suggestion of the McGowan Coffee Company, and had been served on the complainant, and that the complainant had denied any indebtedness to the said King, and that the McGowan Coffee Company contested said answer and asked that the McGowan Coffee Company be made a party to the suit, and to have a writ of injunction issued, enjoining the McGowan Coffee Company from further prosecuting said garnishment; that the complainant insurance company was entitled to have the policy reformed so that all endorsements would bear the correct date, and be properly cancelled by the court for failure of the defendant King to comply with the warranties therein contained by virtue of the lack of the contractual interest of the Smith County Bank in said policy; and tendered the unearned part of the premium. The Smith County Bank admitted it had no lien against the property covered by the insurance policies and disclaimed interest therein, and it was dismissed as to the defendant's said suit.

J. J. King appeared in answer to the two bills and set up in effect that he was ignorant of the business of insurance, admitted the execution of the policies as alleged in the bill, and also admitted that the inventory was made on the 2d of January, and averred in his answer that the agent of the insurance company assisted in making out the inventory, and that the stock of goods contained in the store at the time of the issuance of the policy was largely in excess of the amount of the insurance contained by the two policies, and averred that the agent of the insurance company had agreed to write him a good and valid policy, and he relied upon the agent of the insurance company on account of his superior knowledge, to procure for him a valid and enforceable contract of insurance. He answered that in truth he did keep a set

of books which clearly and plainly presented a complete record of his business transacted, including purchases, shipments, sales, both for cash and credit, as required by the policy; that the agent of the insurance company advised him as to the manner and method of keeping a set of books, and that his method of so doing was assented to by the agent of the company. He admitted that he failed to keep the said books, inventories and records securely locked in a fire-proof safe at night and at all times when the building was not actually open for business, which fact, the defendant alleged, was known to the complainant when the contract of insurance was consummated, and that the complainant knew that the defendant did not have such iron safe for such purpose and waived that provision in the policy. He admitted that on or about the 24th of January, 1938, that in the nighttime, when the building was not open for business, the building and stock of goods was completely destroyed by fire, and that the books, inventories and records could not be produced for inspection for they were destroyed by fire, but denied that the policy was null and void on that account and alleged that it constituted a valid and legal obligation, for the reason that the complainant, prior to and at the time the policy was made and delivered, had full and complete knowledge that the defendant King kept no iron safe in the building, and that he did not intend to put an iron safe in the building, and that the agent and representative of the complainant represented to the defendant King at the time of the acceptance of the risk that it was unnecessary for a fire-proof iron safe to be in the building, that it was the intention and purpose of the complainant to execute a valid and binding policy of insurance on the stock of goods then existing and to be replaced when sold; that the complainant, through its duly authorized agent, inspected the risk, receipted for the premium and delivered the policy, with full knowledge that the defendant King did not have an iron safe in the said building in which to keep his inventory and

set of books at night, as required by the policy, and that he had no intention of procuring such iron safe as provided in the policy.

It was further represented in the answer that the Smith County Bank had no mortgage or deed of trust, or lien of any kind, but claimed that the matter of debt to such bank was fully disclosed to the agent of the insurance company, and the agent of the insurance company represented that making the Smith County Bank the beneficiary of the loss-payable clause would protect all of his creditors. He further alleged in the answer as to the liens on furniture and fixtures, that he fully disclosed the contracts to the agent of the insurance company, and that the insurance company knew of and assented to the arrangement, and the issuance of the policy, the agent representing that the loss-payable clause would protect various defendants' interest.

The other defendants filed answer, setting up their rights under their respective contracts, and by agreement, all of the cases were consolidated and an agreed statement of facts was entered, with the agreement that other testimony on other matters could be introduced by the respective parties. In the agreed statement of facts, it is agreed that the court had full and complete jurisdiction, that the insurance companies were authorized to do business in the State of Mississippi and in Covington County, and that they were corporations of the states alleged in the bill, and were doing business in Mississippi; that J. J. King was an adult citizen of Mount Olive, Mississippi, and the McGowan Coffee Company was a corporation under the laws of the State, and that the Hobart Manufacturing Company was a corporation under the laws of Ohio, and was doing business in Mississippi, the McCray Refrigerator Sales Corporation organized under the laws of Indiana, and authorized to do business in Mississippi; that J. J. King in January, 1938, and some time prior thereto, was engaged in the business of running a retail grocery store in Mount

Olive, Mississippi, and his business was located in the building described in the insurance policy, the building belonging to the Mount Olive Masonic Lodge No. 264 in Mount Olive, Mississippi, that the two polices were issued as above set out in the pleadings, and that the copies of the policies attached to the answers of J. J. King, Cause No. 286, was a true copy; that J. J. King had prior to January 7, 1938, made an inventory of the stock of goods, with the assistance of C. C. Calhoun, local agent of both insurance companies, and that said inventory was in the place of J. J. King at the time the said contract was entered into, that on the 24th of January, 1938, the building, in which defendant King conducted his retail grocery store, was destroyed by fire, and that at the time of the fire, all premiums of insurance referred to had been fully paid, and that when the fire occurred, King did not have a fire-proof or iron safe, and that all inventories, sets of books, or records of business transactions had and made by the said King prior to the fire were in the said building at the time of the fire and were completely destroyed, that the fire occurred after midnight on January 23, 1938, in the nighttime when the said store building was not open for business; that the Smith County Bank named in the loss-payable clause of the policy of insurance with the World Fire & Marine Insurance Company, and in the mortgagee clause attached to the Camden Fire Insurance Association policy, was only a general creditor of King and had no interest in said property insured by either policy, held no mortgage, deed of trust, or lien upon said property, and that the bank had no interest in the controversy other than a general creditor. It was admitted that the judgment mentioned in favor of the McGowan Coffee Company was secured, as mentioned, and that the other mortgages mentioned above existed as stated, and that all the causes might be tried together, in vacation by agreement, before the judges of this Court.

The chancellor found for the defendant King as to both

policies, and entered an order reforming the policies, and adjusted the rights between King and the several creditors mentioned above, and rendered judgment for the amount of the policies, with interest from the date of loss, and from which judgment this appeal is prosecuted.

·On the trial of the case, the agent of the company, C. C. Calhoun, who solicited the insurance and delivered the policy, admitted assisting Mr. King in making the inventory which was taken on the 2d day of January of the stock of goods then in the store, but stated that King called out the articles and the value and that he wrote them down, that he personally did not examine the articles included in the inventory. He also testified that he knew that King had no safe in the store at the time that the policies were issued, but denied telling King it was not necessary for him to keep an iron safe, and stated that nothing was said at the time in reference to the iron safe, or that the books, inventory and records would be kept in a place not subject to fire in the store building where the goods were situated. He further testified that he was in the store a number of times between the issuance of the policies and the date of the burning, that he did not see any material difference in the amount of goods contained in the store at the time of the issuance of the policy and the time of the burning, but that he made no examination of the stock of goods more than a casual view of what was in the store.

Defendant King testified that he kept records in conformity with the policy, but that he had no iron safe in the store and that he did not keep the books, sales records, inventory, etc., called for in the policy at another place not subject to fire in case the building in which the store was operated burned. He does not testify to any statement that he made to Calhoun or other agent of the company of any intention to keep the books, records, inventory, etc., in the store. In other words, the record is silent as to any communication of any intention disclosed to any agent of the company to keep such books,

inventory, sales records, etc., in the store itself. King testified with reference to the furniture and fixtures insured by the Camden policy that he fully disclosed these matters to Calhoun at the time, showing him the contracts, etc., which statements Calhoun denied. In so far as the policy of the Camden Fire Insurance Association is concerned, the testimony is conflicting as to whether the agent Calhoun knew of the contracts involved or not; and the chancellor, on the finding of fact on the controversy, has applied it favorably to the defendant J. J. King and his creditors, and is binding upon this Court, and judgment in reference thereto will be affirmed in all respects, including the fixing of the rights of the several other defendants.

We do not find in the record any sufficient evidence to constitute a waiver on the part of the World Fire & Marine Insurance Company of that part of the contract which provides: "or, failing in this, the assured will keep such books and inventories in some place not exposed to a fire which would destroy the aforesaid building. In the event of failure to produce such set of books and inventories for the inspection of this company, this policy shall become null and void, and such failure shall constitute a perpetual bar to any recovery thereon." The burden of showing a waiver of the provisions of the policy was upon the insured King, and the testimony of King showing that Calhoun knew that he had no safe, and had stated to him that it was not necessary to have an iron safe in which to keep records at night, or all times when the building mentioned in the policy was not actually open for business, is not sufficient to show a waiver of the alternative clause. The full clause as quoted above: "3d. The assured will keep such books and inventory, and also the last preceding inventory, if such has been taken, securely locked in a fire-proof safe at night, and at all times when the building mentioned in this policy is not actually open for business; or, failing in this, the assured will keep such books and inventories

in some place not exposed to a fire which would destroy the aforesaid building. In the event of failure to produce such set of books and inventories for the inspection of this company, this policy shall become null and void, and such failure shall constitute a perpetual bar to any recovery thereon.'' Under this third clause the insured King had the option either to have the iron safe in the store and keep the inventory, record of sales and books therein, as provided in the first part of clause 3, *or failing in this, he had the option to keep such books, inventories and records in some place not exposed to a fire which would destroy the aforesaid building.* (Italics supplied.) He was not obligated under the terms of the policy to provide an iron safe and keep therein the inventory, books and records of his business, but he might, without violating the policy, keep such books, inventories and records in some other place not exposed to the fire which would destroy the building in which the business was conducted.

The importance of keeping inventories, books and correct records of the transaction of the business, and to produce them in case of loss for the inspection and examination of the insurer is one of vital importance to the interest of the insurer, and would enable it, if complied with, to trace the transactions reflected by the books so as to verify the truth of the matters contained therein, and to determine with more or less precision the real amount of the loss incurred by the fire under its policy. Of course, one of the essential things,—the most important thing of all,—is the production of the inventories, books of accounts, records of sales, shipments, etc., so that the transactions might be investigated and the loss be determined with relative precision. It is difficult to see how an insurance company could safely transact any business without requiring the production of inventories, books of account. etc. It is not meant to say, of course, that the company cannot waive any provision of its contract, but when so important a provision as that now

under review, which so vitally affects the right of the insurance company to ascertain the loss, and to properly conduct an investigation in reference thereto, and to make a defense when sued upon such contract, requires that the proof of waiver be clear and convincing. The burden being upon the insured King to produce evidence of the waiver of the provisions of the policy, he should produce evidence amounting to a probability that there was in fact a waiver, and the waiver must be coextensive with the terms of the policy or conditions of the insurance. A waiver of having an iron safe in the store for the keeping of the records in the night-time, and at other times when the store was not open for business, is not waiver of the alternative provision.

It is fundamental to the right of contract that parties may make the contract evidencing their transaction, in writing, and that the terms of the contract, unless prohibited by law, must be enforced by the courts as written. Parties to a contract each have rights therein, and the rights are to be determined by the terms of the contract, and if the terms of the contract are not contrary to law or public policy, the courts must enforce them as written. As said in Berry v. Lamar Life Ins. Co., 165 Miss. 405, 142 So. 445, 446, 145 So. 887: "The life insurance business has become one of the most extensive businesses in the country, and such business depends almost entirely upon contracts. The power to make such contracts as the parties desire to make, when not prohibited by law or public policy, is a fundamental principle of the life insurance business, and is essential to its successful conduct". The widom of having such contractual protection is amply shown by the facts of this case. There was nothing in the way of records from which the company could see just exactly what the insured had in his stock of goods at the time it was destroyed by fire.

.. There was a total inability in this case, although the chancellor heard the full facts, to show the amount of any particular part of the merchandise usually carried

in the stock. King himself testified as a witness, and was wholly unable to give any data of sufficient dependability as to how much of any of the goods or merchandise carried in his stock were destroyed, and he could only arrive at it by estimates not founded on facts, but taken from a most general observation or recollection. It is true that he introduced other witnesses who undertook to say, from casual observation and estimates, not founded on facts, but on conjecture, as to what goods were in the store, both at the time of the issuance of the policy and at the time of the fire, and in the intermediate period. We think, in the absence of complying with the terms of the policy, in a substantial .way, that it was improper to go into the testimony as to the amount of stock involved in the loss, but the statement above made is to show the uncertainty and consequently the unreasonableness of applying a waiver where it does not extend to the broad terms of the contract in all of its essentials.

We do not mean to say what would be the result of the latter part of clause 3, providing that the policy would be void if the inventories, books of accounts, etc., were not produced for the inspection of the parties, had the inventory, books, etc., been placed in a building or place where it would not be exposed to danger from the fire which resulted in the loss of the stock of goods; and had the inventory, books, invoices, etc., in such case been previously destroyed by accident or fire in another building not exposed, we would have a different case. The provisions contained in clause 3, above quoted, are of the highest importance and are consistent with the public policy and general good of the people of the State. Its tendency is to give substantial, accurate evidence of loss, and the value of the loss at the time the fire occurred, and to prevent fraud and perjury. Of course, when property is destroyed by fire, the property has been lost to society. Insurance merely places the loss upon the insurer in proper cases, rather than the insured, but

nevertheless the property is gone and society is deprived of the use thereof.

It would serve no useful purposes, in our opinion, to go extensively into the authorities, because we think that the principles controlling are well established, and it would be a useless labor to protract this opinion by a review of the many cases bearing upon insurance contracts and waiver and forfeiture of clauses embraced therein. It seems clear to us that the court was in error in not holding on the facts of this record that a waiver was not proven by substantial and competent evidence; and, for the error in this regard, the judgment must be reversed and judgment rendered here in favor of the World Fire & Marine Insurance Company.

Reversed and rendered as to World Fire & Marine Insurance Company, and affirmed as to the Camden Fire Insurance Association.