LEE, Justice,
for the Court:
Co-administrators of the Estate of Harold G. Hammond, Deceased, sued Marcoin, Inc. in the Chancery Court of the First Judicial District, Hinds County, upon a license contracts) for the value of certain accounts owned by Hammond and the value of a license issued to him by Marcoin, Inc. The chancellor (Honorable J. C. Stennett) entered a decree in favor of the Hammond estate for the sum of thirty-six thousand six hundred sixty-one dollars forty cents ($36,-661.40) and Marcoin, Inc. [Marcoin] has appealed. We reverse in part.
The threshold question is whether or not a clause in the contract(s) designated “Termination by Death”[1] and which provides *1258 for sale of the Hammond accounts upon his death should be construed to mean that appellant is required to pay the deceased’s estate a certain amount for the value of the license in addition to the value of the accounts. Our construction of the contract obviates the necessity of considering and discussing other assignments of error.
Harold G. Hammond entered into two (2) license agreements with Marcoin on September 1, 1973, wherein he was to operate accounting/management services for service stations (MMS) and for small businesses (BUSCO). The licensing agreements provided that Marcoin assign and transfer all of its existing clients and accounts in Hinds, Madison, Rankin and Warren Counties to Hammond for which he was to pay Marcoin an amount set forth in a formula stipulated in the agreements. Hammond executed two (2) notes in favor of Marcoin in the sum of nineteen thousand one hundred eighty-five dollars ($19,185.00) and four thousand two hundred fifty dollars ($4,250.00). The license agreements further provided that Hammond could not sell or assign the licenses to any person except upon written permission of Marcoin, that the agreements were purely licensor-licen-see relationships, and that termination of the agreements for any reason prohibited Hammond from engaging in a competitive business in the area for a period of two (2) years following such termination.
On June 13, 1976, Hammond died. Appellant considered the license agreements terminated, operated the business for two and one-half (2%) months and then sold same to one Wiley Perry at a consideration of twenty-eight thousand three hundred forty dollars ($28,340.00) for the existing contracts and thirteen thousand three hundred twenty-five dollars ($13,325.00) for the licenses. The licensed area was extended to cover ten (10) counties in Mississippi.
The license agreements expressly provided for the termination of said licenses upon the death of a sole licensee and Marcoin tendered to the Hammond estate nineteen thousand four hundred eighty-nine dollars ($19,489.00) as the amount due it, according to the formula contained in the “Termination by Death” clause. At trial, the parties stipulated that the accounts had a value of twenty-four thousand seven hundred eighty dollars ($24,780.00). The chancellor found that the appellant was indebted to said estate in the sum of $24,780.00, plus $13,325.00 (value of the licenses). He deducted from the total of those figures the balance due on the two notes of September 1, 1973, and entered judgment for appellees in the sum of $36,-661.40. Since a tender of $19,489.00 had been made by Marcoin to appellees, the chancellor held that interest was payable only on the amount of the judgment in excess of the tender figure.
The question is clearly presented here as to whether the principle of freedom of contract governs, or whether appellees are entitled to relief in equity because the “Termination by Death” clause is the result of grossly unequal bargaining power on the part of Marcoin. Appellant relies upon the principle of freedom of contract, argues that the “Termination by Death” provisions of the license agreements between the parties are clear, definite, unambiguous, and are controlling. In Hoerner v. First National Bank of Jackson, 254 So.2d 754 (Miss. 1972), this Court stated:
“The cardinal rule of construction of contracts is, of course, to ascertain and give effect to the mutual intentions of the parties and to reject a construction which leads to unfair or unjust results unless the terms pointing thereto are unambiguous and express.” 254 So.2d at 759.
In World Fire & Marine Ins. Co. v. King, 187 Miss. 699, 191 So. 665 (1940), it was stated:
“It is fundamental to the right of contract that parties may make the contract evidencing their transaction, in writing, and that the terms of the contract, unless *1259 prohibited by law, must be enforced by the courts as written. Parties to a contract each have rights therein, and the rights are to be determined by the terms of the contract, and if the terms of the contract are not contrary to law or public policy, the courts must enforce them as written.” 187 Miss. at 719,191 So. at 672.
The contract principle set forth in the above cases has been approved by this Court many times. In the present case, the “Termination by Death” clause specifically set forth the rights of the parties in the event of Hammond’s death. Hammond had the right to include other licensees in the contract(s) with him, which inclusion would have maintained the contract(s) in force after his death. He chose not to do so. Upon Hammond’s death, appellant, or the new licensee, was required, within sixty (60) days, to pay the legal representative of the estate for the accounts based on a simple formula. That formula did not set a value on, or provide payment for, the licenses granted to Hammond. The terms of the clause are clear, express and unambiguous.
Appellees contend that the clause in question is the result of grossly unequal bargaining power on the part of Marcoin, and should be declared void as against public policy, or should be modified to include payment for the licenses. They rely upon Shell Oil Co. v. Marinello, 63 N.J. 402, 307 A.2d 598 (1973). Shell Oil Company had the right to terminate, almost at will, a dealership agreement with Marinello. The New Jersey court found that Shell had terminated the dealership without good cause, stating that “Where there is grossly disproportionate bargaining power, the principle of freedom to contract is nonexistent and unilateral terms result.” 63 N.J. at 408, 307 A.2d at 601. Public policy was involved, since distribution of motor vehicle fuel affected the public in light of the nation’s economy depending on such fuels.
Marinello is distinguished from the case at bar. The clause in question is not available to Marcoin, either at will or on good cause. It is limited to a specific fact situation and provides for a certain result in the event of death occurring during the term of the agreements. The clause further provides that the license agreement will not terminate, if the second party is a partnership or corporation.
We are of the opinion that freedom of contract controls the facts of the present case, that this is not a proper one for intervention of equity, nor is the principle of recoupment[2] applicable.
The parties stipulated, and the chancellor found, that the value of the Hammond accounts on the date of his death, June 13, 1976, was $24,780.00. He also found that Hammond owed appellant the sum of three thousand three hundred eighty-three dollars twenty-four cents ($3,383.24), which amount deducted from the value of the accounts leaves a net sum of twenty-one thousand three hundred ninety-six dollars seventy-six cents ($21,396.76) due appellees. The chancellor further held that appellees were not entitled to interest on the sum of $19,489.00, which was tendered to appellees by appellant and was refused by them. However, appellees were under no duty to accept less than the amount due them ($21,396.76) and they were entitled to lawful interest on said amount from August 13, 1976. Holmes v. Bates, 218 Miss. 233, 67 So.2d 273 (1953).
The judgment of the trial court is reversed and judgment is entered here for appellees in the sum of $21,396.76 with lawful interest from and after August 13,1976.
AFFIRMED IN PART AND REVERSED IN PART.
PATTERSON, C. J., SMITH and ROBERTSON, JJ., SUGG, WALKER, BROOM, BOWLING and COFER, JJ., concur.

. “B. TERMINATION BY DEATH:
In the event this Agreement is terminated by reason of the death of Second Party, if Second Party is an individual, First Party or new Licensee shall purchase Second Party’s accounts and Second Party’s legal representative shall sell said assets. First Party guarantees that the purchase price shall be paid to the legal representative of the deceased within sixty (60) days based on the total of the last six (6) months verified and audited franchise reports submitted to First Party, less advanced billings *1258 existing on date of death. This Paragraph 16B to purchase Second Party’s accounts shall not apply where Second Party consists of more than one individual, or is a partnership or corporation.”

. The doctrine to equitably allow a distributor reasonable time to recover his expenditures when a manufacturer, after having required the distributor to make large investments, terminates the agreement without good cause. Ag-Chem Equipment Co., Inc. v. Hahn, Inc., 480 F.2d 482 (8th Cir. 1973).