**OMP, a Mississippi General Partnership and Lasercraft, Ltd., a Mississippi Limited Partnership, Plaintiffs,**

**v.**

**SECURITY PACIFIC BUSINESS FINANCE, INC., a Delaware Corporation, Defendant.**

**SECURITY PACIFIC BUSINESS FINANCE INC., a Delaware Corporation, Counterplaintiff,**

**v.**

**Pryor Spencer BAILEY, as General Partner of OMP; Leslie Banks Brasell, as General Partner of OMP; O.A. Cleveland, Jr., as General Partner of OMP; Lasercraft, Ltd., a Mississippi Limited Partnership; and Robert F. McMillan, Counterdefendants.**

Civ. A. No. WC 86–132–D–D.

United States District Court, N.D. Mississippi, W.D.

April 14, 1988.

---

See also 716 F.Supp. 251.

James L. Bonner, Olive Branch, Miss., J.P. Coleman, Ackerman, Miss., Briggs Smith, Smith, Phillips & Mitchell, Batesville, Miss., Eugene Greener, Jr., Henry C. Shelton, III, Schneider & McQuiston, Memphis, Tenn., for plaintiffs and counterdefendants.

John Dunbar, Holcomb, Dunbar, Connell, Chaffin & Willard, Oxford, Miss., for defendant and counterplaintiff.

## MEMORANDUM OPINION

DAVIDSON, District Judge.

This cause is presently before the court on the defendant/counter-plaintiff's motion for summary judgment as to plaintiffs' claim and for partial summary judgment as to the counterclaim. Having reviewed the parties' briefs, the motion papers on file, and being otherwise fully advised in this matter, the court finds that the defendant's motion for summary judgment and for partial summary judgment should both be sustained. The court also considers the plaintiffs' motion for reconsideration of its motion to amend and the defendant's motion to strike certain affidavits not well taken and denies both.

## I.

### FACTUAL BACKGROUND

This is an action related to possession and title to a certain piece of property located in Oxford, Mississippi. The property, presently known as the University Inn ("the Inn"), has gone through a series of owners over the past five years. The thrust of the present action is to confirm ownership and quiet title in the defendant/counterplaintiff, Security Pacific Business Finance, Inc. ("Security Pacific"), and to ascertain whether the plaintiffs/counterdefendants, OMP, Lasercraft, Ltd. ("Lasercraft"), Pryor Spencer Bailey ("Bailey"), Leslie Banks Brasell ("Brasell"), O.A. Cleveland ("Cleveland") and Robert F. McMillan ("McMillan") are entitled to any injunctive or monetary relief from Security Pacific.

In 1983 Thunder Corporation ("Thunder") acquired title to the Inn, obtaining money to buy the Inn by executing and delivering in Dallas, Texas a certain promissory note secured by a deed of trust and dated October 19, 1983 in the principal amount of $1,847,144 payable to the order of Security Pacific. The deed of trust conveyed the Inn in trust to Security Pacific.

At that time, Thunder also executed a subordinate purchase money note to Lasercraft in the amount of $543,200.00. To secure the Lasercraft note, Thunder executed a second deed of trust, subordinate to the deed of trust in favor of Security Pacific.

By the summer of 1985, Thunder was in bankruptcy. For a substantial period of time, the original note to Security Pacific had been in default. Relief from the automatic bankruptcy stay was obtained by Security Pacific and Lasercraft to foreclose. A valid foreclosure in 1985 by Security Pacific, however, would have extinguished all subordinate interests in the Inn, including Lasercraft's interests.

In June 1985, Security Pacific made a $175,000 loan, secured by the 6.5 acre tract of land adjacent to the Inn, on a note (the "adjacent note") made by Brasell, Bailey and McMillan. *See* Exhibits K and L to defendant's answer. This $175,000 was to be utilized to pay operating expenses of the Inn and for refurbishing the Inn. Lasercraft then foreclosed on its security interest in the property and transferred the property to OMP.

Later in the summer of 1985, OMP took possession of the premises and began operating the Inn. At this time, the balance owing on the $1,847,144 loan by Thunder to Security Pacific included accrued interest, costs of collection and other items aggregating approximately $436,398.25, along with unpaid taxes with penalty and interest totalling $63,051.42 which Security Pacific had paid on behalf of the Inn.

OMP sought to continue operations of the Inn and apparently desired to attempt revitalizing the property with the hope of obtaining a national franchise. Thus, from June 1985 through October 1985, OMP and Security Pacific conducted lengthy negotiations which resulted in the execution of a Settlement Agreement dated October 9, 1985. *See* Exhibit A to plaintiff's complaint. The Settlement Agreement recited and memorialized, *inter alia,* the following events, terms and instruments negotiated by the parties:

1. Lasercraft had foreclosed and conveyed its right, title, and interest to OMP, which had repossessed the Inn and had begun to operate it.

2. Security Pacific agreed to extend the outstanding loans of Thunder in exchange for OMP, Bailey, Brasell, and Cleveland, jointly and severally, executing and delivering a promissory note (or "extension note") in the principal amount of $1,847,144.00. *See* Exhibit A to Defendant's Answer.

3. Security Pacific loaned an additional $90,000 to be used as operating funds and for refurbishing of the Inn, and OMP, Bailey, Brasell, and Cleveland, jointly and severally, executed and delivered a promissory note (or "operating note") in favor of Security Pacific. *See* Exhibit B to Defendant's Answer.

4. Bailey, Brasell and Cleveland on behalf of OMP, executed and delivered a non-recourse promissory note (or "tax note") in the amount of $63,-051.42 for the 1983 and 1984 taxes owing on the Inn and previously paid by Security Pacific. *See* Exhibit C to Defendant's Answer.

5. Bailey, Brasell and Cleveland, on behalf of OMP, executed and delivered to Security Pacific another non-recourse promissory note (or "deficiency note") in the amount of $436,-398.55 for the amount of unpaid, accrued interest on the note owing from Thunder and for costs and expenses of collection incurred up to the date of closing of the Settlement Agreement. *See* Exhibit D to Defendant's Answer.

6. In addition to the earlier deed of trust executed to secure the $175,000 loan, another deed of trust and a security agreement were executed and delivered on behalf of OMP to Security Pacific to secure the extension note, the operating note, the tax note and the deficiency note. *See*

Exhibits E and I to Defendant's Answer.

7. Security Pacific agreed to forebear from foreclosing unless and until such time as OMP defaulted on the notes.

OMP allegedly entered into the Settlement Agreement and executed the above-referenced notes under threat of foreclosure from Security Pacific. The affidavits of Bailey and Brasell aver that they were each "told ... that unless I signed the agreement[s] and did so immediately, that I knew what was going to happen, meaning the Security Pacific loan ... would be foreclosed and the property would be disposed of." No factual basis for these assertions is given in the respective affidavits. The court notes, however, that foreclosure by Security Pacific, as mentioned above, would have extinguished OMP's interest in the Inn.

After the parties executed the Settlement Agreement, there was apparently some discussion of obtaining a franchise from Days Inn on the Inn. In May 1986, a representative of Days Inn inspected the property and a representative of Security Pacific also conferred with the OMP partners regarding the possibility of obtaining a Days Inn franchise. None of these negotiations involving a franchise, however, were set to writing by the parties, although plaintiffs now contend that Security Pacific represented that additional funds would be made available for OMP to refurbish the Inn if OMP obtained a Days Inn franchise. OMP also paid a $3,000 application fee for the purpose of obtaining a Days Inn franchise; it appears that the application never resulted in a Days Inn franchise because Security Pacific later foreclosed on the property and this lawsuit was then filed.

According to Security Pacific's records and the affidavit of Ray Thousand, Senior Credit Administrator for the Loan Division of Security Pacific, the following defaults occurred after the Settlement Agreement was executed.[1]

---

1. Plaintiffs' only response to Security Pacific's allegations is that they "thought the note was current." As discussed more fully in the court's conclusions of law, such an insufficient factual showing from plaintiffs can hardly be considered adequate to overcome Security Pacific's

1. Monthly payments of $10,000 each on the extension note were past due and payable for December 1985, January 1986, February 1986, and March 1986.

2. Taxes for 1985 were past due and payable.

3. No monthly financial reports, which were required under the loan documents, were filed by OMP or its partners.

4. Security Pacific accelerated and proceeded to foreclose on April 30, 1986.

5. Shortly before April 30, 1986, Security Pacific accepted $50,000 in past due interest on the extension note. Security Pacific agreed to forebear from foreclosing and gave OMP and its partners until year-end to pay the 1985 taxes.

6. By July 1986, the extension note was in default again, along with the operating note and the adjacent note. A $10,000 payment due July 15, 1986 on the extension note was not made. Semi-annual interest payments for January 1, 1986 and July 1, 1986 were due and payable on the operating note. An $87,500 payment due June 13, 1986 on the adjacent note was due and payable.

7. Security Pacific's records show only the following payments prior to foreclosure:

| Amount | Date Received |
| --- | --- |
| $10,000 | 10/31/85 |
| $10,000 | 12/10/85 |
| $50,000 | 5/2/86 |
| $10,000 | 6/3/86 |
| $10,000 | 6/4/86 |

All of these sums received were applied against the interest accrued under the extension note.

8. After notifying the debtors, Security Pacific again accelerated the notes and proceeded to foreclosure scheduled for August 19, 1986. On August 18, 1986, Security Pacific again agreed to forebear from foreclosing and to reinstate the notes if the debtors would cure the outstanding defaults.

9. Finally, another foreclosure was initiated in September 1986. Security Pacific took no action at this point to forebear from completing foreclosure proceedings.

Security Pacific posted and published the requisite notice of foreclosure by sale of the property.[2] On September 25, 1986, Security Pacific purchased the Inn and the adjacent 6.5 acre tract as highest bidder, bidding $1,000,000 for the Inn and $120,000 for the adjacent tract. *See* Exhibits F, G, H, M, N and O to defendant's answer. When Security Pacific sought to obtain possession of the Inn and the adjacent tract, the plaintiffs filed this lawsuit.

As noted above, in this action plaintiffs seek to have the foreclosure declared invalid and also seek an award of damages from Security Pacific. Plaintiffs assert that the foreclosure was wrongful, that Security Pacific had made an unconditional refinancing agreement with OMP, and that Security Pacific breached this refinancing agreement by foreclosing on the property.

The court denied plaintiffs' motion for injunctive relief against the foreclosure in its earlier memorandum opinion and order. In its present motion for summary judgment and motion for partial summary judgment, Security Pacific seeks dismissal of plaintiffs' claims for money damages and partial summary judgment on its counterclaim quieting and confirming Security Pacific's title to the Inn and the adjacent property.

## II.

## CONCLUSIONS OF LAW

### A. Summary Judgment Standard

The parties offer differing interpretations of the purpose and availability of

---

motion for summary judgment. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265, 275 (1986).

**2.** In his response to Security Pacific's motion for summary judgment, Brasell attempts to raise again the question of adequacy of the description of the property in the foreclosure notice. This issue was previously ruled on by this court in its memorandum opinion of November 17, 1986. *See OMP, Et Al v. Security Pacific Business Finance,* No. WC 86–132–D–D, memo. op. at 7 (N.D.Miss. Nov. 17, 1986). The court finds no basis for reconsideration of this issue herein.

summary judgment in this case. Plaintiffs assert that courts should grant summary judgment sparingly, while Security Pacific suggests that summary judgment should be liberally granted to intercept factually deficient claims and defenses. Security Pacific's concept of the summary judgment standard more closely approximates the recent rulings of the Supreme Court in this area, which suggest that courts should grant motions for summary judgment in order to "isolate and dispose of factually unsupported claims or defenses." *Celotex Corp., supra,* 477 U.S. at 323, 106 S.Ct. at 2553, 91 L.Ed.2d at 274.

The overriding purpose of Federal Rule of Civil Procedure 56 is to preclude the necessity for trial where a "trial would be a bootless exercise, fated for an inevitable result but at continued expense for the parties...." *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1195 (5th Cir.1986). Thus, as the Supreme Court has recently emphasized, courts should not hesitate to grant summary judgment "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, [and] there is no 'genuine issue for trial.'" *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 552 (1986).

In interpreting Rule 56(c), the Supreme Court has suggested a three-step standard. First, the court looks to the allegations of the moving party. In this regard, the moving party goes forward by "informing the district court of the basis of its motion and identifying those portions of [the] record ... which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp., supra,* 477 U.S. at 323, 106 S.Ct. at 2553, 91 L.Ed.2d at 274.

Once the moving party has satisfied its initial burden, the court then looks to the non-moving party "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp., supra,* at 322, 106 S.Ct. at 2553, 91 L.Ed.2d at 273. A non-moving party's complete failure to prove an essential element of his claims

renders all other facts immaterial because there is no longer a genuine issue of material fact. *Id.* To satisfy its burden, the non-moving party must put forth "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 213 (1986). The burden on the non-movant is not light. It will not suffice to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita, supra,* 475 U.S. at 586, 106 S.Ct. at 1356, 89 L.Ed.2d at 552. Nor will "conclusory allegations ... suffice to require a trial when there is no evidence to support them even if the movant lacks contrary evidence." *Fontenot, supra,* 780 F.2d at 1195–1196.

Having reviewed both parties' allegations and factual support thereof, it finally remains for the court to determine whether "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Once the court has made this three-step inquiry and found that the non-moving party has not put forth "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party...." *Anderson, supra,* 477 U.S. at 249, 106 S.Ct. at 2510, 91 L.Ed.2d at 212, then "[t]he plain language of Rule 56(c) mandates the entry of summary judgment [for the moving party]." *Celotex Corp., supra,* 477 U.S. at 320, 106 S.Ct. at 2551, 91 L.Ed.2d at 273.

The court must now apply the above-described summary judgment standard to Security Pacific's motions for summary judgment and partial summary judgment.

**B. Security Pacific's Motion for Summary Judgment on Plaintiffs' Claims**

Security Pacific argues that there is no genuine issue of material fact to preclude summary judgment on plaintiffs' claim. The court is also of the opinion that plaintiffs have failed to bring forward "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

The court's jurisdiction in this matter is grounded on 28 U.S.C. § 1332. Sitting in

diversity, this court's rulings are controlled by the substantive law of the State of Mississippi. *See Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Thus, the court must look to Mississippi law to determine whether plaintiffs have stated any claim or put forth sufficient facts to withstand Security Pacific's motion for summary judgment.

The gravamen of plaintiffs' complaint is their allegation that Security Pacific made an "unconditional refinancing commitment" to OMP and its partners and that by foreclosing on the Inn, Security Pacific breached that commitment as well as its duty of good faith and fair dealing owed plaintiffs, thereby causing plaintiffs to sustain damages. Complaint at 8–9. Plaintiffs also assert that Security Pacific in some manner "wrongfully foreclosed" on the Inn, causing plaintiffs to be "wrongfully dispossessed of their interests in the hotel property and lands adjacent thereto." Complaint at 8. As indicated in the court's memorandum opinion and order of November 17, 1986, "the foreclosures held herein were valid and lawful under Mississippi law." Memo. op. at 10. Thus, the court here addresses only plaintiff's claims that Security Pacific breached its unconditional refinancing commitment and/or its duty of good faith and fair dealing. The court reiterates that any challenge to the propriety or validity of the foreclosures is no longer an issue in this lawsuit. Furthermore, Security Pacific's claim for a deficiency judgment will be addressed at the trial of this matter.[3]

The plaintiffs' remaining claims sound in tort and contract. Plaintiffs assert not only that Security Pacific breached its contract with OMP and its partners individually but also that said breach "constituted an independent tort committed against plaintiffs." Complaint at 8. The court considers each of plaintiffs' theories for recovery separately below.

### 1. Security Pacific's Breach of an Unconditional Financing Commitment to OMP and its Partners Individually

In support of their contention that Security Pacific breached an agreement to provide unconditional refinancing for the Inn, plaintiffs urge the court to consider three elements as indicative of Security Pacific's alleged breach; a) promissory estoppel; b) usurious and unconscionable conduct by Security Pacific; and, c) Security Pacific's breach of its duty of good faith and fair dealing. The court considers each of these elements in turn but is of the opinion that each is totally without factual support and must be rejected.[4]

### a. Promissory Estoppel

■ Plaintiffs' promissory estoppel argument is based on certain alleged representations made by Security Pacific's employee, Mr. Kris Cooper, to the effect that Security Pacific would provide "unconditional refinancing" if OMP were able to obtain a Days Inn franchise for the Inn. Based on these alleged representations, plaintiffs assert, they relied to their detriment and applied for a Days Inn franchise, paying the necessary $3,000 application fee and continuing to pay the amounts due under the renewal note in anticipation of receiving additional financing to refurbish

---

**3.** In his memorandum in opposition to Security Pacific's motions, Brasell argues that Security Pacific is not entitled to a deficiency judgment at this juncture and raises several challenges directed to the adequacy of the sale price at which Security Pacific obtained the properties in foreclosure. Since Security Pacific admits that summary judgment may not be granted on its claim for a deficiency judgment, the court defers any ruling on these issues until this matter is tried on the deficiency claim.

**4.** Although Security Pacific requests that the court strike plaintiff Brasell's response to its motions for summary judgment and partial summary judgment because said response raises new legal theories and issues of fact, the court finds that since such theories and issues are unavailing to plaintiffs it is unnecessary to strike the response. The court recognizes, however, that its rulings are limited to the pleadings of record in this case and expresses its agreement with the magistrate's ruling on plaintiffs' untimely motion to amend. *See* discussion at II.D., *supra.* The court also notes that all plaintiffs have joined in Brasell's response.

the Inn in order to obtain a Days Inn franchise.

In his deposition, Cooper denies that he made any representation to OMP or any of its individual partners that unconditional financing would be granted if a Days Inn franchise were obtained. On the contrary, Cooper testified in his deposition that he merely suggested that a Days Inn franchise "might make sense for that property." *See* Deposition of Kris Cooper at 34–36. Cooper also testified that he explained to OMP and the individual partners that his lending authority was only $750,000 and that any additional commitment would have to be made by senior management. *Id.*

In their affidavits and depositions, plaintiffs Bailey and Brasell aver that Cooper "told the partners that necessary funds to refurbish the motel would be made available by Security Pacific if OMP would apply for a Days Inn franchise."[5] Plaintiff Bailey admits that Cooper indicated his lending authority was limited to $750,000, but Bailey explains in his deposition that the contemplated refurbishing of the Inn was expected to cost no more than $300,000 to $400,000, well within Cooper's lending authority.[6]

Additionally, the court notes that in his deposition Bailey freely admits that Cooper's alleged representations were only a verbal commitment to provide the purported refinancing.[7] Bailey's testimony agrees with that of plaintiff O.A. Cleveland, Jr., who testified at the November 6, 1986 hearing on Security Pacific's possessory action that he had received no written commitment from Security Pacific, but that he only had "two conversations from Chris Cooper indicating that he would do it...." as evidence of Security Pacific's alleged unconditional refinancing commitment.[8] Similarly, the Days Inn representative who was involved in OMP's application for a franchise, Mr. Jeffrey T. Williams, testified

that he "never heard Chris Cooper specifically say its a done deal, or you have the financing...."[9]

In response to the plaintiffs' assertion that Cooper made a binding commitment on behalf of Security Pacific and in favor of OMP, Security Pacific argues that the oral statements of Cooper, if in fact he made the statements attributed to him by plaintiffs, are too vague and indefinite to constitute an enforceable contract. Additionally, Security Pacific asserts that since Cooper's statements were not set to writing, then any such statements are either prohibited by the parol evidence rule or otherwise have no effect on the underlying contractual obligations of OMP and the individual partners.

Under Mississippi law, promises purported to constitute a parol contract must be sufficiently definite to create a contract. *First Money, Inc. v. Frisby*, 369 So.2d 746 (Miss.1979); *Izard v. Jackson Production Credit Corp.*, 188 Miss. 447, 195 So. 331 (1940). Likewise, to raise a promissory estoppel, the party claiming an estoppel must adduce sufficient evidence that a promise was made. *See FMC Finance Corp. v. Reed*, 592 F.2d 238, 243 (5th Cir.1979) (applying Mississippi law). Finally, it is prevailing Mississippi law that an oral modification of a written contract must be supported by additional consideration. *See Stahlman v. National Lead Co.*, 318 F.2d 388 (5th Cir.1963); *Pritchard v. Hall*, 175 Miss. 588, 167 So. 629 (1936). Plaintiffs allege no additional consideration running to Security Pacific in exchange for the supposed "unconditional refinancing commitment" made by Security Pacific.

Although plaintiffs have offered evidence that Cooper made an oral promise to finance OMP's efforts to obtain a Days Inn franchise, plaintiffs offer no factual basis whatsoever for a finding that Cooper's

---

**5.** *See* Affidavit of Spencer Bailey; Affidavit of Leslie Banks Brasell; and Deposition of Pryor Spencer Bailey, III at 88–90.

**6.** *See* Deposition of Pryor Spencer Bailey, III at 89–90.

**7.** *Id.*

**8.** *See* transcript of testimony of O.A. Cleveland, Jr. at 34–35; Exhibit 12 to Defendant's Motion for Summary Judgment.

**9.** *See* Deposition of Jeffrey T. Williams at 14.

promise, if made, was to have any effect on OMP's and the individual partners' already existing contractual obligation to Security Pacific. To the contrary, the court notes that Cooper's offer to assist OMP in obtaining a Days Inn franchise was more likely based on an intent merely to "enhance the collateral value" of the Inn, which enhanced value would ultimately provide Security Pacific greater security in the event of default.[10]

Notwithstanding plaintiffs' efforts to create an issue for trial on whether Cooper made the purported promise, the court finds that plaintiffs have not created a "genuine issue as to any material fact", Fed.R.Civ.P. 56(c), even if the court credits the plaintiffs' promissory estoppel argument. For all their efforts to show that Cooper and Security Pacific agreed to finance OMP's efforts to obtain a Days Inn franchise, plaintiffs have availed themselves nothing. Even assuming that Security Pacific did agree to finance a Days Inn franchise, plaintiffs can point to no written agreement in connection therewith which modified the outstanding notes of OMP and its individual partners or made these notes contingent upon OMP's obtaining a Days Inn franchise. *See Federal Sav. and Loan Ins. Corp. v. LeFeve*, 676 F.Supp. 764, 767–768 (S.D.Miss.1987). Each note executed by OMP and the partners individually provides that it can only be modified in writing. Plaintiffs offer no showing of a written modification of any of the notes.[11]

Furthermore, the court finds as a matter of law that, even assuming Kris Cooper made the representations attributed to him by the plaintiffs, his imprecise offer to totally finance the refurbishing of the Inn if OMP obtained a Days Inn franchise would not constitute an enforceable contract nor a promise sufficient to raise a promissory estoppel in favor of the plaintiffs. *See Frisby, supra,* 369 So.2d at 751.

*b. Usury*

■ Plaintiffs next assert that the various notes and the Settlement Agreement executed between plaintiffs and Security Pacific are invalid based on certain alleged usurious terms in the notes and the alleged unconscionable nature of the notes and the Settlement Agreement. The court deems this argument of plaintiffs to be totally without factual or legal support.

The court observes that nothing on the face of the complaint offers any indication of this usury argument now raised by plaintiffs. Since the court is of the opinion that amendment of the complaint at this juncture is untimely and should be denied, the court finds that the arguments raised by plaintiffs regarding the alleged usurious nature of the notes executed by OMP and Security Pacific are insufficient to overcome Security Pacific's motion for summary judgment.

■ Plaintiff Brasell argues that several factors "give rise to a tentative presumption of the existence of usury." There is no "presumption of usury" under Mississippi law: one claiming usury must furnish clear, positive, and certain proof of usury. *Wilson Industries, Inc. v. Newton County Bank,* 245 So.2d 27 (Miss.1971). Plaintiffs suggest that further discovery might permit them to present proof of the alleged usurious nature of the notes, however, "[a]llegations that one 'might could' show certain facts at trial are simply insufficient under Rule 56(e)." *Pelotto v. L & N Towing Co.,* 604 F.2d 396, 403 (5th Cir.1979). The court, therefore, must reject plaintiffs' argument that the notes are usurious.

These factors which plaintiffs argue are indicative of usury include: the alleged backdating of the notes; OMP's assumption of the debt of another debtor (Thunder) which was insolvent; the overall oppressive treatment of plaintiffs; the alleged complexity and incomprehensibility of the interest formulae; and Security Pa-

---

10. *See* Deposition of Kris Cooper at 36–37, 39.

11. In the November 6, 1986 hearing, the court inquired whether plaintiffs alleged an accord and satisfaction or novation of the notes via the

alleged unconditional refinancing commitment. Plaintiffs confessed that the commitment did not represent either a novation or an accord and satisfaction.

cific's alleged attempt to reap a windfall return on $275,000 loaned to OMP for less than one year.[12]

■ The court is of the opinion that none of these factors indicates any intentional violation by Security Pacific of the Mississippi usury statute. *See United Companies Mortgage & Etc. v. Lester*, 394 So.2d 1350 (Miss.1981). Even if the documents were backdated, plaintiffs had every opportunity to correct the dates before they signed same. The court finds no prohibition in the usury statute against one debtor assuming the debt of another insolvent debtor. *See* Miss.Code Ann. § 75–17–1 (Cum.Supp.1987). The court likewise has some difficulty construing Security Pacific's conduct as oppressive.

By permitting plaintiffs to renew and accept responsibility for the Thunder note instead of foreclosing on its deed of trust against the Inn, Security Pacific permitted OMP and Lasercraft to protect their subordinate interests. Had Security Pacific chosen to foreclose its superior notes, OMP's and Lasercraft's interests in the Inn would have been extinguished. Such renegotiation by Security Pacific which inured to the benefit of OMP and Lasercraft does not strike the court as oppressive conduct. There can be no question that Security Pacific thus rendered valuable consideration in exchange for OMP's promise to renew the Thunder note.

■ The court finds no complexity or incomprehensibility in the interest formulae set forth in the various notes executed by OMP. Even if the notes provide for an interest rate in excess of that provided by law—and the court holds that plaintiffs have failed to preserve this issue by failing to raise it in their complaint or their answer to the counterclaim—such an error on Security Pacific's part would not invalidate the underlying notes unless plaintiffs could show that Security Pacific's actions in

charging more than the permissible rate was intentional. *United Companies Mortgage, supra*, 394 So.2d at 1352–1353.[13]

The plaintiffs offer no legal authority for their suggestion that Security Pacific reaped an improper windfall by foreclosing on the notes. Since plaintiffs offer no legal support for this argument, and the court has found none, the court must also reject this contention.

### c. Unconscionability

■ Plaintiffs next argue that the notes they executed are to be deemed invalid because of unconscionability and overreaching by Security Pacific. The court finds this argument lacking in factual and legal foundation.

Plaintiffs cite the court to Miss.Code Ann. § 75–2–302 (1972), which permits the court to hear evidence "when it is claimed or appears to the court that the contract or any clause thereof may be unconscionable...." This statutory provision, however, is included in Mississippi's codification of Article Two of the Uniform Commercial Code, which applies generally to transactions in goods, not to secured transactions. *See In re Advance Printing & Litho Co.*, 277 F.Supp. 101 (W.D.Pa.), *aff'd*, 387 F.2d 952 (3rd Cir.1967); *Wasserbauer v. Marine Midland Bank*, 92 Misc.2d 388, 400 N.Y.S.2d 979 (1977).

The plaintiffs offer no authority for application of § 75–2–302 to the security agreements and promissory notes involved in the case *sub judice*. Thus, the court must presume that plaintiffs seek to offer this statutory language as analogous authority for the proposition that the agreements and notes may be declared invalid if the court deems them to be unconscionable. The court finds no basis for concluding that the subject notes and agreements are in fact unconscionable.

---

**12.** The court presumes plaintiffs refer to the $90,000 operating note and the $175,000 adjacent note, which actually total only $265,000.00.

**13.** If plaintiffs can sufficiently connect this usury argument with Security Pacific's claim for a deficiency judgment without raising again the issue of validity of the underlying foreclosure, the court may be willing to hear proof on this usury argument at the trial on the deficiency judgment claim.

The first and foremost principal of contractual law is that contracting parties may exercise their freedom of contract in any manner they deem appropriate, thus:

[T]he terms of the contract, unless prohibited by law, must be enforced by the courts as written. Parties to a contract each have rights therein, and the rights are to be determined by the terms of the contract, and if the terms of the contract are not contrary to law or public policy, the courts must enforce them as written.

*World Fire & Marine Ins. Co. v. King,* 187 Miss. 699, 719, 191 So. 665, 672 (1939); *see also Employers Mut. Cas. Co. v. Nosser,* 250 Miss. 542, 164 So.2d 426 (1964).

The principle of unconscionability is an equitable doctrine invoked and applied by the courts when there is some showing of grossly unequal bargaining power between the contracting parties. *Marcoin, Inc. v. Hammond,* 368 So.2d 1257, 1258–1259 (Miss.1979). Equity need not intervene, however, where freedom of contract controls. *Id.*

The court is of the opinion that the plaintiffs have failed to show sufficient inequality of bargaining power between themselves and Security Pacific to justify application of the principle of unconscionability to the agreements and notes involved in the case at bar. The transactions between Security Pacific and OMP involved arms-length negotiations between commercial actors. This is not a case involving a contract of adhesion forced upon an unwilling and powerless consumer. Furthermore, even though Security Pacific was unquestionably in a superior bargaining position to that of plaintiffs, the terms and conditions offered by Security Pacific were by no means contrary to the terms plaintiffs could reasonably expect to be offered from other creditors. *Cf. Gilchrist Machinery Co., Inc. v. Komatsu American Corp.,* 601 F.Supp. 1192 (S.D.Miss.1984).

The court concludes that the terms of the agreements and notes in question were not so unduly oppressive as to be considered unconscionable. *Cf. York v. Georgia–Pacific Corp.,* 585 F.Supp. 1265 (N.D.Miss. 1984). Accordingly, the court must reject plaintiffs' argument that the notes should be invalidated on the ground of unconscionability.

#### d. Obligation of Good Faith and Fair Dealing

■ Mississippi law imposes an obligation of good faith and fundamental fairness in the performance of every contract. *Bank of Indiana, Nat. Ass'n v. Holyfield,* 476 F.Supp. 104 (S.D.Miss.1979). Plaintiffs make the conclusory allegation that the entire nature of the contracts involved in this case indicate that the covenant of good faith and fair dealing has been violated by Security Pacific. To avoid summary judgment, plaintiffs must offer more than these conclusory allegations. *See Fontenot, supra,* 780 F.2d at 1195–1196. Since plaintiffs offer nothing more than their opinion that Security Pacific has violated the covenant of good faith and fair dealing, the court must reject this unsupported allegation.

#### 2. Security Pacific's Tortious Breach of Its Contract with OMP

The court has heretofore ruled that the alleged promise of Security Pacific's employee, Kris Cooper, did not create a binding contract between Security Pacific and plaintiffs. Since there existed no contract, there could be no tortious breach of contract. The court must reject plaintiffs' tort claim for recovery against Security Pacific.

Having now considered all of plaintiffs' arguments against the motion for summary judgment, the court concludes that plaintiffs have failed to carry their burden of setting forth "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Security Pacific's motion for summary judgment on plaintiff's claim will be sustained.

#### C. Security Pacific's Motion for Partial Summary Judgment

■ Security Pacific moves additionally for partial summary judgment quieting and

confirming its title to the Inn and the adjacent tract, as against OMP, Lasercraft, the individual counterdefendants, and anyone claiming through any of them. The court finds that plaintiffs have made no showing that there exists a genuine issue of material fact precluding entry of summary judgment on Security Pacific's counterclaim.

There is no dispute that the notes and the security agreements were executed and delivered to Security Pacific by the plaintiffs/counterdefendants. There is no genuine dispute that the payments due thereunder were not made as called for in the notes. There is no genuine dispute that the notes and the documents securing them entitled Security Pacific to request the trustee to foreclose by sale in the event of default in payment and that foreclosure entitled the trustee to sell the collateral, as Security Pacific did here.

It is the settled law of Mississippi that "[a] foreclosure under the power of sale is properly conducted if the constitutional, statutory, and contractual requirements entered into by the parties are met." *Lake Hillsdale Estates, Inc. v. Galloway,* 473 So.2d 461, 465 (Miss.1985). This court held in its earlier memorandum opinion and order that the foreclosures in this case were valid and lawful under Mississippi law.

A purchaser at a valid foreclosure, such as Security Pacific here, takes perfect title in the property, as against the mortgagor and those claiming by and through the mortgagor. *Peoples Bank and Trust Co. and Bank of Miss. v. L & T Developers, Inc.,* 434 So.2d 699 (Miss.1983). Security Pacific conducted a valid foreclosure on the property involved herein; thus, it is the finding of the court that Security Pacific is entitled to judgment as a matter of law quieting and confirming its title to the Inn and the adjacent property. The court finds no reason to relitigate the issues already decided in the possessory action when

plaintiffs have offered no genuine issues of material fact attacking the validity of the foreclosure. Any argument directed to the amount of Security Pacific's deficiency judgment, if any, may be addressed when this matter is tried on that issue. Summary judgment will be entered on the counterclaim confirming and quieting Security Pacific's title to the subject property.[14]

### D. Plaintiffs' Motion for Reconsideration of Motion to Amend

■ Plaintiffs request the court to reconsider the magistrate's denial of their motion to amend the complaint. The court finds this request without merit and denies same.

Plaintiffs filed their original complaint in this matter on September 30, 1986. As the magistrate noted, the deadline for joining additional parties or amending the complaint expired on March 15, 1987. Security Pacific filed its motions for summary judgment and for partial summary judgment on June 15, 1987. The present motion to amend was not filed until some two months later on August 27, 1987.

The magistrate correctly observed that all of the issues raised in the proposed amended complaint were known to the parties from the outset of this litigation. Plaintiffs have shown no just cause why they could not have moved to amend within the time prescribed by the scheduling order or why they should be granted leave to amend at this point, after this lawsuit has been pending for more than 15 months.

The court concurs in the magistrate's finding that amendment at this time would sanction the presentment of issues piecemeal and defeat the orderly progression of this litigation. In the exercise of its discretion, the court affirms the magistrate's decision to deny the plaintiffs' motion to amend. *See Zenith Radio Corp. v. Hazel-*

---

**14.** Security Pacific's motion to strike the affidavits of Pryor Spencer Bailey, III, Leslie Banks Brasell and James L. Bonner is directed primarily to assertions made in the affidavits about the fair market value of the Inn. Since the court deems this issue more relevant to the claim for a deficiency judgment, the court finds no cause to strike the affidavits and overrules Security Pacific's motion.

*tine Research, Inc.,* 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971); *Freeman v. Continental Gin Co.,* 381 F.2d 459 (5th Cir.1967).

 Brasell also renews his motion for substitution of the individual partners as plaintiffs in place of OMP because OMP has terminated as a partnership. No legal basis for substitution is argued by Brasell.

Although Brasell does not indicate on what theory he bases his motion for substitution, the court presumes the motion is founded on Rule 25(a) or 25(c) of the Federal Rules of Civil Procedure. Since there has clearly been no transfer of interest from OMP to the individual partners, the court must presume that Brasell's motion is based on Rule 25(a). The question of whether an action survives is a substantive one, in this case determined by Mississippi law. *Cf. Marcano v. Offshore Venezuela,* 497 F.Supp. 204 (E.D.La.1980).

Under Mississippi law, the partnership continues "until the partnership affairs have been wound up." *Smith & Hitt Construction Co., Inc. v. Fowler,* 466 So.2d 896, 899 (Miss.1985). As the magistrate held, since this action was pending prior to the dissolution of the OMP partnership, this lawsuit is obviously an "affair" of the partnership and the partnership must continue until this action is "wound up." Accordingly, the court confirms the magistrate's denial of the motion for substitution of parties.

A separate order consistent with this opinion will be entered.